UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of JAN KOUM, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Criminal Proceeding Against Remi Tessier and Dernier Etage SARL. | No.: 1:25-mc-00428-JPO |

## DECLARATION OF LEON DEL FORNO IN SUPPORT OF REMI TESSIER AND DERNIER ETAGE SARL'S MOTION TO INTERVENE, VACATE THE ORDER ISSUED BY THIS COURT AUTHORIZING DISCOVERY IN AID OF A FOREIGN PROCEEDING UNDER 28 U.S.C. § 1782 AND DISMISS THE PETITION

I, LEON DEL FORNO, declare pursuant to 28 U.S.C. § 1746:

1. I was admitted as an Avocat au Barreau de Paris in France in 2013 and am a Partner at the law firm Temime, in Paris, France. I practice and specialize in white-collar crime and commercial litigation.

2. I submit this Declaration in support of the motion of Remi Tessier and Dernier Etage SARL to intervene, vacate the order issued by this court authorizing discovery in aid of a foreign proceeding under 28 U.S.C. § 1782 and dismiss the petition. I set out below the French criminal law position.

3. In preparing this Declaration, I reviewed a copy of the Declaration of Pierre-Emmanuel Fender in support of Jan Koum's application for an order pursuant to 28 U.S.C.

1

§1782 (the "Fender Declaration"). As explained below, I disagree with many of the assertions in the Fender Declaration.

4. It is undisputed that there is no ongoing criminal case in France. When the Fender Declaration states that "we have helped investigate Tessier's conduct" (§8), it simply refers to Koum's own fact-finding exercise. Likewise, the reference to "an order from a French judge to conduct a search of Tessier's offices" (§9) is misleading: it does not refer to a criminal search, but to an *ex parte* civil discovery order issued by the Paris Commercial Court on 31 July 2025, on the application of Koum's companies Immobiliare, M1 Marine and M2 Marine, which Tessier is currently challenging in Court (the "Paris Commercial Court Order").

5. According to the Fender Declaration, the discovery sought by Koum will allow him to "file a criminal complaint in Paris, France", and this is what the Fender Declaration defines as the "French Criminal Proceeding" (§1). This is misleading: under French criminal procedure rules, filing a complaint by a private citizen does not amount to initiating criminal proceedings.

6. As the Fender Declaration notes, in France, the alleged victim of an offence may obtain redress through the criminal justice system. In order to do so, it must first file a complaint with the prosecutor (*Procureur de la République*) that has territorial jurisdiction over the conduct.

7. Pursuant to articles 40 and 40-1 of the French Code of Criminal Procedure ("FCCP"), the prosecutor has full discretion over how to address the complaint, and generally has three choices: he/she may either (i) dismiss it outright; (ii) decide to offer the suspect an alternative to a criminal prosecution; or (iii) conduct an investigation in order to ascertain whether the facts mentioned in the complaint are established and warrant prosecution.

8. There are two types of investigations under French law: the prosecutor may elect to conduct the investigation himself, through a process known as *enquête préliminaire*; or he may elect to entrust it to an investigating judge (*juge d'instruction*), through a process known as *instruction*. As the Fender Declaration notes, an investigating magistrate may also be appointed at the alleged victim's request if the prosecutor decides to dismiss their initial complaint.

9. The Fender Declaration discusses the *instruction* at length, but is silent on and does not address the *enquête préliminaire*, even though it is far more common: in 2023, the last year for which the statistics are available, French prosecutors elected to appoint an investigating judge in just 5% of cases where they decided to initiate proceedings (https://www.justice.gouv.fr/sites/default/files/2024-11/Chiffres%20Clés%202024%20V3.pdf , p. 15), the rest being handled through an *enquête préliminaire*.

10. For the purpose of this Declaration, there are two critical differences between the two types of investigations:

(a) First, since it is overseen by a judge, an *instruction* is a form of judicial proceeding. By contrast, in an *enquête préliminaire*, no court or judge is appointed to adjudicate the matter until the end of the investigation (which may last up to four years after a raid or a police interview of the suspect, pursuant to Article 75-3 of the FCCP). At this stage, if the prosecutor considers that the charges are sufficiently established, he/she may refer the case to trial, during which a court will conduct a full adversarial hearing.

(b) Second, in an *instruction*, as the Fender Declaration notes, the alleged victim may become a party, and is then allowed to have access to the case file, submit observations to the investigating judge or request specific investigative measures to be performed. By contrast, in an *enquête préliminaire*, the alleged victim does not have access to the case file (unless the prosecutor decides to grant such access, which he has discretion to do pursuant

3

to Article 77-2 of the FCCP) and is not allowed to participate in the investigation. In this context, the primary persons in charge of fact-finding are the prosecutor or the law enforcement agency he appoints, with limited input from the alleged victim (apart from filing its initial complaint and responding to potential requests for information).

11. Consequently, the purpose for which Koum says he seeks discovery, i.e. filing a criminal complaint, is not a criminal proceeding. Further, if and when the prosecutor decides to investigate Koum's complaint through an *enquête préliminaire*, which happens in 95% of cases, Koum will have no standing in that process, and no court will be appointed to rule on the matter until the end of the investigation. At this time, none of this has happened, and it is not even clear when Koum intends to file a complaint to potentially have the prosecutor pursue the matter.

12. The Fender Declaration states that Koum intends to file a criminal complaint in France in the future because Tessier's conduct amounts to multiple criminal offences, in particular fraud, breach of trust and deception.

13. However, these assertions are misleading: on the basis of the facts mentioned in the Fender Declaration, the charges mentioned do not appear to attach viably to the facts at issue, and instead correspond to civil claims that should be pursued in court or arbitration. I understand that arbitration is already pending in the United Kingdom between these private citizens through their companies

14. The Fender Declaration alleges that Tessier overbilled the products he sold, which amounts to fraud within the meaning of Article 313-1 of the French criminal code (§11.a). However, the French criminal case law on this issue is clear: "sending an invoice to claim payment of an amount that is not actually owed constitutes a written lie, which by itself cannot constitute the offense of fraud" (French Supreme Court, Criminal Chamber, October 7, 1969, Bull. crim. No. 242; April 30, 2003, No. 02-84.505; May 19, 2021, No. 20-83.223).

4

15.     The Fender Declaration also alleges that Tessier's conduct amounts to breach of trust within the meaning of Article 314-1 of the French criminal code (§11.b). However, as the Fender Declaration acknowledges, one of the constituent elements of this offense is that property or funds be transferred to the suspect for a specific purpose. Nowhere does the Fender Declaration suggest that Koum ever entrusted any funds or property to Tessier. Consequently, this offense appears equally inapplicable.

16.     The Fender Declaration alleges that Tessier committed the offense of deception, and refers to Article L.213-1 of the French consumer protection code. However, Article L.213-1 of the Consumer Code, which previously dealt with the offense of deception, was repealed by a later statute (Article 34 of Ordonnance n°2016-301 of March 14, 2016). In its current form, Article L.213-1 concerns the conclusion of contracts by electronic means. Fender's claim is therefore incorrectly based on a repealed legal provision.

17.     As a result, what the Fender Declaration presents as a matter of criminal law is, in reality, a private commercial dispute, which should be settled in an arbitration, pursuant to the parties' commercial contractual agreement.

18.     I also firmly believe that Koums' position that he needs evidence to file a complaint is inaccurate. According to the Fender Declaration, Koum seeks discovery in the present case in order to file a criminal complaint, and the evidence which he seeks to obtain is "critical" to this end (§24). This is inaccurate: under French law, there is no minimal standard of proof an alleged victim needs before he may file a criminal complaint. Mere suspicions of criminal conduct are enough to convince a prosecutor to open an investigation. A complaint may very well rely entirely upon the alleged victim's allegations, such as those that are included in the Fender Declaration. Koum does not need the evidence he seeks in order to file a criminal complaint.

19.     In addition, even assuming that the evidence would be "central to establishing the scope of the scheme and Tessier's intent" (§12), this does not mean that it

5

would be for Koum to obtain that evidence. Indeed, as mentioned previously, in French criminal cases, the responsibility of fact-finding operations rests on the prosecutor (in case of an *enquête préliminaire*), the investigating judge (in case of an *instruction*) or the law enforcement agencies they appoint to carry out investigative steps. Therefore, the fact that Koum may not have direct access to evidence has no bearing on its availability in a potential criminal investigation.

20.    The primary fact-finding tool of French criminal investigations is to conduct a search-and-seizure operation at the suspect's residence and/or place of business. Pursuant to Article 56 of the FCPP, the French criminal authorities have very broad powers in this context, and are allowed to collect all potentially relevant evidence in the suspect's custody or control (with very limited exceptions). It is likely that the evidence which Koum seeks to obtain in the U.S. is also available within Tessier's offices in Paris, and therefore the French criminal authorities will be able to obtain it from him.

21.    Further, Prosecutors or investigating judges routinely issue mutual legal assistance requests to foreign authorities, notably to the U.S. authorities pursuant to the Treaty between the Government of the United States of America and the Government of France on mutual legal assistance in criminal matters, signed at Paris on December 10, 1998. For instance, between 2007 and 2015, the French authorities issued 475 mutual legal assistance requests to the U.S., i.e. over 50 per year on average (Report by Mr. Philippe Baumel, MP, to the French *Assemblée Nationale*, reference No. 3443, dated 27 January 2016, p. 9 – available at https://www.assemblee-nationale.fr/14/pdf/rapports/r3443.pdf). Contrary to what the Fender Declaration alleges (§24), therefore, the process is not uncertain, and its duration is compatible with the standard duration of an investigation in France.

22.    Accordingly, the fact that "Koum would have no procedural mechanism in France to compel the Merchants to provide evidence directly" (Fender Decl. at 23) is irrelevant: the evidence will still be accessible to the French criminal authorities, who will be

able to obtain it – either from Tessier's office or from the Merchants directly, through a mutual legal assistance request – and use it in the event of a trial involving Tessier. The difference is that Koum would not have "direct control" over the process (Fender Decl. at. 24), which is fully consistent with French criminal procedure.

23.     Therefore, Koum does not need discovery from the U.S. to file his complaint or assert his rights in future proceedings in France.

24.     The Fender Declaration states that "a request for discovery would not circumvent any French proof-gathering restrictions under the circumstances of this case" (§30). This is inaccurate.

25.     First, it is evident Koum intends to circumvent the restrictions imposed by the Paris Commercial Court Order. On 29 July 2025, Koum filed an *ex parte* application to the Paris Commercial Court, in order to be authorized to collect evidence from Tessier and Dernier Etage (Exhibit 1). It is troubling to me that the Fender Declaration fails to mention this application at all, all the more so since it sheds a revealing light on the Paris Commercial Court Order, which Fender elected to attach as an Exhibit to his declaration.

26.     Specifically, Koum requested leave to collect all of the correspondence issued or received by Tessier and two of his employees, as well as any documents within their possession, custody or control, containing a series of search terms, which include the names of the Merchants. Accordingly, through this application, Koum was seeking substantially the same evidence as what he seeks in discovery from the New York witnesses in this Section 1782 proceeding, which I understand would be disclosable in discovery anyway in the ongoing arbitration in the United Kingdom.

27.     Notably, the Paris Commercial Court Order rejected the majority of Koum's application, presumably because it considered that it was overbroad: it allowed Koum to collect only "copies of accounting documents relating to the supply of items reinvoiced by

Dernier Etage to the Plaintiffs, in accordance with the invoices listed in appendices 1 and 2 to this order" (Document 14-1 at 2).

28. In addition, the Paris Commercial Court Order subjected these documents to a "provisional sequestration", a measure which French courts may order in these circumstances "in order to ensure the protection of trade secrets" (Article R.153-1 of the French commercial code). In practice, this means that Koum will not be allowed to receive the documents until the court has assured itself, through an *inter partes* procedure, that they will not infringe Tessier and Dernier Etage's right to the protection of their trade secrets.

29. Therefore, by seeking discovery from the Galleries and Merchants in the U.S., Koum is effectively trying to circumvent the decision of the Paris Commercial Court, who has already denied him the right to obtain the evidence he is seeking, and to evade the proof-gathering restrictions imposed by the Paris Commercial Court Order.

30. Second, through the current discovery process, Koum is attempting to circumvent the limitations which the French criminal authorities would place on the evidence to be collected.

31. Assuming a Prosecutor even pursued this private dispute in a criminal context, any evidence collected by the French criminal authorities becomes part of the case file. If the investigation is conducted as an *enquête préliminaire*, neither the alleged victim nor the suspect have access to it while the investigation is ongoing: they only receive access to the documents collected by the authorities once the matter is brought before a court (unless the prosecutor decides to grant them such access beforehand, which he has discretion to do pursuant to Article 77-2 of the FCCP). If the investigation is conducted as an *instruction*, the parties do have access to the case file and the evidence it contains. However, they may not use this evidence for any other purpose than the investigation: pursuant to Article 114-1 of the FCCP, disclosing it to third parties is a criminal offence, which may be punished by up to three years' imprisonment and a fine of €45,000.

8

32. Therefore, if the evidence which Koum is seeking in the U.S. was collected directly by the French authorities, as is customary in French investigations, Koum would either be unable to access it right away, or be restricted from using it outside of the investigation. If Koum obtains discovery in the U.S., he would be able to circumvent these limitations and to use the evidence freely for his commercial advantage in his disputes with Tessier

I declare under penalty of perjury that the foregoing is true and correct.

DATED:   Paris, France

October 27, 2025

_____
Leon Del Forno