**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Application of JAN KOUM, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Criminal Proceeding Against Remi Tessier and Dernier Etage SARL.

No. 1:25-mc-00428-JPO

---

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE, VACATE THE OCTOBER 3, 2025 ORDER AND DISMISS THE PETITION, OR ALTERNATIVELY, FOR A PROTECTIVE ORDER CONCERNING THE SIX SUBPOENAS DUCES TECUM AUTHORIZED PURSUANT TO 28 U.S.C. § 1782

---

**PORZIO BROMBERG & NEWMAN, PC**
*Attorneys for Movants Remi Tessier and Dernier Etage SARL*
1675 Broadway, Suite 1810
New York, New York 10019
(646) 348-6722
wjhughes@pbnlaw.com
gmfellner@pbnlaw.com
cmnolan@pbnlaw.com

10048063

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 3

ARGUMENT .................................................................................................................... 7

     I.     INTERVENTION IS APPROPRIATE ..................................................... 7

     II.    THE COURT SHOULD VACATE THE OCTOBER 3 ORDER AND
            DISMISS THE PETITION ...................................................................... 8

     III.   ALTERNATIVELY, THE COURT SHOULD ISSUE A PROTECTIVE
            ORDER TO SIGNIFICANTLY NARROW THE SCOPE OF ANY
            PERMITTED DISCOVERY ................................................................... 17

CONCLUSION ................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

Certain Funds, Accounts, and/or Investment Vehicles v. KPMG, LLP, 798 F.3d
    113 (2d Cir. 2015) ...................................................................8

In re Accent Delight Int'l Ltd., 869 F.3d 121 (2d Cir. 2017) .................... 11, 12

In re Application of Bourlakova, No. 24-MC-71 (JPO), 2024 WL 4839047
    (S.D.N.Y. Nov. 20, 2024) ............................................................7

In re Application of Consellior SAS, No. 16mc00400, 2017 WL 449770
    (S.D.N.Y. Feb. 2, 2017) ............................................................15

In re Application of Sarrio, S.A., 119 F.3d 143 (2d Cir. 1997) ....................7

In re Ex Parte Application of Ativos Especiais II, 24-mc-119 (LJL), 2024 WL
    4169550 (S.D.N.Y. Sept. 12, 2024) ................................................15

In re Ex Parte Application of Sylvia Benedek Klein and Eliane Benedek Segal,
    20-mc-203 (PKC), 2022 WL 14786787 (S.D.N.Y. Oct. 22, 2022) ........................15

In re Ex Parte Petition of Ismael Reyes, 19 Civ. 7219, 2019 WL 6170901
    (S.D.N.Y. Nov. 20, 2019) ............................................................7

In re JSC BTA Bank, 577 F. Supp. 3d 262 (S.D.N.Y. 2021) ............................7

In re Petition of Craig, 131 F.3d 99 (2d Cir. 1997) ...............................14

In re Sargeant, 278 F. Supp. 3d 814 (S.D.N.Y. 2017) ...............................9

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) ........9, 13, 14, 15, 16, 17

Mees v. Buiter, 793 F.3d 291 (2015) .......................................... 13, 15

Optimal Investment Services, S.A. v. Berlamont, 773 F.3d 456 (2d Cir. 2014)...... 11, 12

U.S. v. Proctor & Gamble Co., 356 U.S. 677 (1958)................................14

ZF Automotive US, Inc. v. Luxshare, Ltd., 596 U.S. 619 (2022) ................. 2, 8

### STATUTES

28 U.S.C. § 1782.................................................................*passim*

28 U.S.C. § 1782(a)................................................................13

ii

**RULES**

Fed. R. Civ. P. 24(a) ..............................................................................................................8

Fed. R. Civ. P. 24(b) ........................................................................................................ 7, 8

Fed. R. Civ. P. 45 ...............................................................................................................14

Rule 26 ...............................................................................................................................15

iii

## PRELIMINARY STATEMENT

This Section 1782 proceeding is an improper and overreaching attempt by Petitioner Jan Koum ("**Petitioner**" or "**Koum**") to deploy broad U.S.-style discovery in aid of contentious private arbitrations in Europe, while pretextually invoking a "contemplated" French criminal complaint that, as of now, does not exist because it has never been filed. No French judicial authority has investigated or begun addressing Koum's allegations. The only pending proceedings are private civil arbitrations that Remi Tessier and his company, Dernier Etage SARL (collectively, "**Movants**") filed against Koum on July 3 and 4, 2025 under civil contracts in England and France. These civil arbitrations are subject to wide ranging duties of privacy and confidentiality. In France, Koum sought an ex parte order without notice for discovery on July 31, 2025, which expedited effort was declined by the French court. The application will be subject to inter partes submissions at a hearing in Paris on January 6, 2026. The French Court has directed Koum to not access any materials obtained through his discovery application in France until after the inter partes hearing.

According to Koum, he has been investigating issues concerning the Movants for "more than two years across the United States and Europe." (Declaration of Pierre-Emmanuel Fender in Support of Koum's Application for an Order Pursuant to 28 U.S.C. § 1782, dated Sept. 29, 2025 ["**Fender Decl.**"], ¶ 8, ECF No. 14). This investigation – to the extent it ever existed beyond the contemplations of Koum's "team" – is strictly Koum's own private mission. And it is only now, three months after Movants filed arbitration proceedings in Europe against Koum for monies rightfully due – and following Movants' arrest of the multi-million superyacht Koum owns to secure payment – that this § 1782 application was filed to "enable [Koum] to file and pursue his criminal proceedings." As set forth in the accompanying declaration of Leon Del Forno, Esq., a French attorney specializing in criminal law, there is no need to collect evidence to pursue a

1

criminal complaint in France. That can – ***and will*** – be done by the prosecutor if there is ever a criminal case placed into existence.

The application for discovery in New York was granted by this Court *ex parte* on October 3, 2025 (ECF No. 17), and six sweeping subpoenas *duces tecum* have been authorized and/or issued by Koum's counsel to three New York galleries and three merchants. (Accompanying Declaration of Hassan Khan, Esq., dated October 27, 2025 ["**Khan Decl.**"], ¶1,¶10). The subpoenas are extremely broad, seeking any communications with any third parties concerning Movants. That includes, from these high-end art dealers, competitively sensitive information about' customers, business strategies, and pricing, untethered to any "contemplated" criminal proceeding Koum says he wants to pursue. The overbroad document requests are improper and seek information prejudicial to both Movants and the six witnesses

Movants respectfully seek an order to permit intervention to protect Movants' interests, vacate the October 3 Order, and dismiss the § 1782 application to render any subpoena unauthorized. Four independent grounds compel that result. First, the "for use" requirement of § 1782 is not satisfied because there is no pending or objectively ascertainable foreign criminal proceeding. The materials sought are in reality aimed at private arbitrations—proceedings that the U.S. Supreme Court has held lie outside § 1782. Second, the contentious arbitrations already pending between the parties in the United Kingdom, as well as the proceedings relating to the seizure of Koum's superyacht in the Netherlands, and prospective arbitrations in France, make plain that the § 1782 effort is an impermissible end-run around Supreme Court precedent barring discovery for use in private foreign arbitrations. See <u>ZF Automotive US, Inc. v. Luxshare, Ltd.</u>, 596 U.S. 619, 623 (2022). Third, the petition is an abusive litigation tactic in a broader, highly contentious, multi-jurisdictional feud orchestrated by Koum against the Movants and brought in

bad faith, as underscored by Koum's dissemination to the press in London, the United States and France, immediately upon filing the Petition for one reason: to sully the Movants' reputation. Fourth, the subpoenas are facially overbroad and disproportionate, as they seek "all documents concerning transactions or interactions" with Movants and their agents and "all communications with any third party concerning [the Movants]" regardless whether the documents have a nexus to Koum or his allegations of fraud. Koum professes to have knowledge of discreet transactions based on his alleged two-plus year private investigation that make up his accusations, yet he is plainly on a fishing expedition to seek documents going well beyond those identified transactions.

Dismissal of the Petition is appropriate. At minimum, if the Court is disinclined to dismiss, it should quash the current subpoenas and require any reissued process to be narrowly tailored to the specific issues raised and subject to strict confidentiality, attorneys' eyes only designation for sensitive commercial materials, an express non-use/non-dissemination bar to the press or any non-party, and to dispense with depositions of the witnesses to avoid needless burden and expense. The Court should also note that the discovery sought, to the extent that it exists and is relevant at all, can be sought through the contractually binding, wide ranging discovery procedures in the two pending London private Arbitrations (see Khan Decl., ¶¶ 25-28).

## STATEMENT OF FACTS

Koum sought and obtained, *ex parte*, an order authorizing sweeping discovery from six New York high-end art galleries and merchants. (Order, dated Oct. 3, 2025 ["**October 3 Order**"], ECF No. 17). The Petition shows that these businesses are engaged in multimillion dollar fine art transactions and asserts the discovery is necessary for supposed "use" in a contemplated, unfiled, French criminal proceeding against Remi Tessier and Dernier Etage SARL. (See Memorandum of Law in Support of Koum's Application for an Order Pursuant to 28 U.S.C. § 1782 ["**Petitioner**

3

Br."], at 21-23).  The October 3 Order authorizes issuances of subpoenas to take depositions and document discovery from the galleries and merchants as requested.  (October 3 Order, ECF No. 17).

Koum glosses over the fact that private arbitrations are underway in the United Kingdom. In fact, two arbitral proceedings were commenced in the UK by Dernier Etage against Koum's affiliated companies on July 3-4, 2025, nearly three months before the Petition was filed before this Court. Both sets of arbitral proceedings are governed by English law (Khan Decl., ¶5, ¶16-23).

In the first set of arbitral proceedings, brought against Koum's affiliated company Immobiliare Management LLC,  Dernier Etage commenced proceedings  in its Request for an Appointment of an Arbitrator dated July 4, 2025. Dernier seeks a wide range of awards from the arbitral tribunal, including a preliminary declaration that Immobiliare and its advisors shall refrain from further contact with Tessier's and Dernier Etage's suppliers and obliging the parties to respect the confidentiality attaching to their contract; a declaration that Dernier Etage has not breached any of its contractual obligations, including but not limited to a declaration that they did not overbill Immobiliare; and a declaration that Immobiliare's correspondence has defamed Dernier Etage, and as such, Immobiliare is required to compensate Dernier Etage for reputational damage sustained as a result (Khan Decl., ¶ 17).

In the second set of arbitral proceedings Dernier filed, the arbitral tribunal is required to consider wide-ranging allegations by M2 Marine Holdings Ltd (another affiliate of Koum), including allegations that Tessier or Dernier Etage: (a) repeatedly misrepresented the true and/or accurate costs of the FF&E (furniture, fixtures and equipment) procured, inflating its invoices and claiming higher base sums than Dernier Etage paid for; (b)   misrepresented the quality of FF&E

4

acquired for the Moonrise 2, substituting lower quality goods for what it claimed to be expensive, premium goods and falsely charging for base costs of premium goods; (c) falsified invoices to erase discounts and misrepresent the true and / or accurate costs of the FF&E acquired; (d) misrepresented currencies to take advantage of exchange rates and obtain greater sums from M2 Marine than what it actually paid to acquire the FF&E; and (e) following Mr Koum's discovery of the fraud and after questioning, altered, forged and fabricated documents to conceal misconduct (Khan Decl., ¶26 (e)).  The allegations raised by M2 Marine are analogous to those set out in the Petition.

The arbitral proceedings are subject to confidentiality obligations upon the parties (Id., ¶29), and include clear, wide ranging and binding mechanisms for discovery and the exchange of evidence, including, should it be necessary, provision for either party to request that the arbitral tribunal order further evidence be disclosed (Id., 25-28).

The subpoenas' definitions and requests are expansive, demanding all communications with Movants, "including but not limited to communications regarding procurement, pricing, quotes, discounts, commissions, incentives, and substitution or replacement of goods" as well as "communications between [the subpoenaed party] and any third party concerning [Movants]." (See Exs. 1-6 attached to the Declaration of Orin Snyder in Support of Petitioner's Application, dated Sept. 29, 2025 ["**Snyder Decl.**"], ECF Nos. 13-1 through 13-6).  Koum demands the production of associated metadata, and makes other broad demands necessarily requiring production of sensitive materials about unrelated customers, competitors, and internal merchant data that have no nexus to Koum or any particular dispute or transaction with Tessier.  Without specifying what is required to be produced – even though Koum professes to have been privately investigating Tessier for more than two years – Koum asserts that, if the Court grants discovery as

requested, "Koum could provide that evidence to enable the investigating judge, and subsequently the trial court, to determine the offenses that Tessier committed." (Fender Decl., ¶ 16, ECF No. 14). But no investigating judge or trial court has yet been enlisted. (See id., ¶¶ 12, 15, ECF No. 14). Moreover, Koum concedes he does not even know what crimes may theoretically in the future be charged. (See id., ¶¶ 10, 15-16, ECF No. 14). Koum wants to peer into Movants' business broadly, not only within his home jurisdiction, where he has commenced an ex parte civil proceeding to get records from Movants' Paris office (see Khan Decl., ¶¶35-37) but now in the United States, in a deliberate effort to damage Movants' reputation.

Koum concedes that arbitrations between the parties are already pending in Europe and that the alleged contemplated French complaint has not been filed. (See Fender Decl., ¶ 12 and n. 1, ECF No. 14; Petition Br. at 21-22, ECF No. 12). As stated, the arbitrations were initiated by Movants in July 2025 to seek damages for amounts due regarding services rendered on Koum's super yacht called Moonrise II. (Khan Decl. , ¶16, ¶23) and other damages and relief by Tessier against Koum and his affiliated entities (id., ¶17, ¶24). Koum acknowledges arbitration proceedings in the United Kingdom (id., ¶¶15-16)but there is a third arbitration imminent in France also as Koum must know (id., ¶43).

The parties' disputes are intensely contested across jurisdictions. Movants commenced civil proceedings in England, and France, all within the last three months. Among other developments, a European arrest of the super yacht Moonrise II occurred by Order of the Rotterdam District Court in the Netherlands on July 3, 2025 at the initiation of Movants, and Koum and his counsel have fired back now with this proceeding. Koum also likely leaked this § 1782 proceeding to the press in England immediately upon Koum filing this ex parte § 1782 proceeding. (Khan Decl., ¶9). This emphasizes the risk that U.S. court-enabled compulsory discovery will be

6

10048063

used as a media cudgel rather than for legitimate adjudicative purposes.

## ARGUMENT

## I.

## INTERVENTION IS APPROPRIATE

For § 1782 proceedings, "a party against whom the requested information is to be used has standing to challenge the validity of such a subpoena on the ground that it is in excess of the terms of . . . § 1782." In re Application of Sarrio, S.A., 119 F.3d 143 (2d Cir. 1997). Courts routinely permit such intervention. See In re Application of Bourlakova, No. 24-MC-71 (JPO), 2024 WL 4839047 (S.D.N.Y. Nov. 20, 2024) (permitting intervention by party against which the discovery will be used in the foreign proceeding); In re JSC BTA Bank, 577 F. Supp. 3d 262, 265-66 (S.D.N.Y. 2021) (permitting intervention where petitioner stated he intends to use the records against intervenor); In re Ex Parte Petition of Ismael Reyes, 19 Civ. 7219, 2019 WL 6170901 (S.D.N.Y. Nov. 20, 2019) (permitting intervention under Fed. R. Civ. P. 24(b) where requested discovery was to be used against intervenor in the foreign proceeding). In light of Koum's stated intention to use the records sought against Movants, intervention should be granted. (See Petitioner Br. at 21-23).

Intervention is timely and necessary. The October 3 Order authorizes discovery that directly concerns Tessier and Dernier Etage and affects them, as well as other unrelated non-parties' and the galleries/merchants' confidential commercial proprietary information. (See October 3 Order, ECF No. 17). Movants have a significant protectable interest in preventing misuse of court-ordered, pre-action discovery to force disclosure of irrelevant matters and trade secrets, including private information about customers, pricing, distribution, buying habits, and non-public relationships, all of which have no nexus to Koum. (Khan Decl., ¶54).

Intervention is also proper because in <u>ZF Automotive US, Inc. v. Luxshare, Ltd.</u>, 596 U.S. 619, 623 (2022), the Supreme Court held that § 1782 discovery is not permitted in aid of foreign arbitrations.  <u>See id.</u> (concluding private foreign arbitration panels are not "foreign or international tribunals" permitting discovery under 28 U.S.C. § 1782).  Conveniently omitted from Koum's moving papers is any mention of that opinion.[1]  Given that discovery is underway [or just starting – Hassan to embellish here] in three foreign arbitrations, in particular via two ongoing active arbitrations in the United Kingdom, and one petition by Koum for seizure of Dernier Etage's documents from its offices in Paris, France, the use of § 1782 to get discovery ostensibly for a two plus-year old private investigation towards unfiled French criminal charges targeting Movants, where the scope of such future investigation, if any and future charges, if any is not even known, is an end run around <u>ZF Automotive</u>.  Movants' rights are undeniably at stake here.  Intervention is proper as of right under Fed. R. Civ. Pro. 24(a) or, alternatively, permissively under Rule 24(b).

## II.

## THE COURT SHOULD VACATE THE OCTOBER 3 <br> ORDER AND DISMISS THE PETITION

Section 1782 authorizes discovery only "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782.  While a proceeding need not be pending or imminent, it must be within "reasonable contemplation," supported by objective indicia—not merely a "twinkle in counsel's eye."  <u>Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP</u>,

---

[1]    Koum merely states in his brief that this Petition is separate from the arbitration proceedings as Koum does "not seek discovery here for use in the UK proceedings." Petitioner Br. at 21, n. 22.  Koum obviously says that in light of <u>ZF Automotive's</u> prohibition.  But one must read between the lines.  Koum has hired an international law firm with offices on both sides of the Atlantic to address his multi-nation disputes with Tessier, including the arbitrations and the alleged contemplated French criminal action.  It strains credulity to conclude he does not seek discovery here for use in foreign arbitration.

798 F.3d 113, 124 (2d Cir. 2015); <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 259 (2004). Koum's submission falls well short of that standard.

Koum offers only generalized assertions that criminal proceedings may be brought at some unspecified time, by some unspecified authority, over undefined charges. There is no charging instrument, no sworn statement from a competent prosecutorial authority, no schedule, and no articulation of the putative tribunal's adjudicative role or evidentiary receptivity. Courts routinely reject § 1782 requests where the applicant fails to provide concrete, non-speculative evidence of a likely adjudicative proceeding. <u>In re Sargeant</u>, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017). That is especially true when, as here, the request reads as a pre-complaint fishing expedition to see whether any case can be brought at all. Allowing discovery on such a thin record would invert § 1782's "for use" requirement into a license for pre-action rummaging.

There is no need under French law to embark on discovery in the United States to file a complaint. The discovery sought by Koum is not critical to the filing of his criminal complaint in France, nor would it be up to Koum to obtain any evidence if such a complaint were filed. (Del Forno Decl., ¶¶18–19).

Nor does Koum contend that any foreign court or investigative magistrate has asked for his assistance, authorized Koum's obtaining of evidence abroad, or provided guidance on scope or relevance. The absence of such indicia underscores that no adjudicative process is in reasonable contemplation. The Application therefore fails at the threshold.

Koum relies on his own counsel's submission from the Gibson Dunn law firm in Paris stating that he is preparing a complaint. (Fender Decl., ¶ 12, ECF No. 14). He is not a criminal lawyer. The Gibson Dunn website describes Mr Fender to be "a partner in the Paris office of Gibson Dunn" who "specializes in complex cross-border restructurings and French pre-insolvency

9

and insolvency matters. He regularly advises investors on the management or acquisition of defaulting entities, distressed companies undergoing insolvency proceedings, and creditors – including banks and CLOs – for the recovery of their receivables and the protection of their securities. Pierre-Emmanuel's practice also focuses on resolving complex disputes through litigation proceedings, primarily in an international context. He is involved in a broad range of general commercial disputes (contract and liability) and corporate litigation (such as shareholder disputes, enforcement of warranties, and takeovers of distressed companies) in various business sectors including aeronautics, insurance, finance, and healthcare, among others." This is not a criminal practice; it is at best, a practice specialized in business restructuring and reorganization. (Del Forno Decl., ¶11).  Mr. Fender opines that Koum wants to hold Tessier accountable in his home country of France, and that to do so, Koum requires authentic records obtained directly from Tessier's merchants around the world.  (Fender Decl., ¶ 12, ECF No. 14).  As explained by Mr. Del Forno, this is groundless.  In France, a complainant does not need evidence to proceed with a criminal complaint.  The evidence scope will be addressed by the criminal authorities, not private litigants.  Nowhere does Mr. Fender explain this in his statement.

If the roles were reversed, the court in the United States would permit discovery abroad if it was shown necessary, not to permit a litigant to pursue a global spree of running up costs and expenses disproportionate to the action.  Discovery can easily be abused, including embarking on a global defamation campaign and burdening non-parties with blunderbuss discovery.

Mr. Fender acknowledges that a recent seizure of documents he initiated in France allowed recovery of documents that "form the basis of a criminal complaint."  (Fender Decl., ¶¶ 9-10). Thus, there is no showing of need to seek discovery in the United States when it is conceded sufficient facts are in Koum's hands, and the documents which were seized by Koum from Dernier

10

Etage's offices will likely include those which Koum now seeks discovery of in the United States. If, after a complaint is filed and a French judicial authority indicates that evidence in the United States will be useful and cannot be obtained elsewhere, that would be a horse of another color entirely.

The Second Circuit has recognized that foreign criminal investigations may, under certain conditions, qualify as "proceedings" under 28 U.S.C. § 1782. In Optimal Investment Services, S.A. v. Berlamont, 773 F.3d 456 (2d Cir. 2014), the Court upheld discovery for use in a Swiss criminal investigation where a magistrate had already been appointed and the defendant had been formally charged. Id. at 461. Critically, the Swiss "investigating magistrate had explicitly stated that the [requested discovery] would be 'of great usefulness' to [his] inquiry.'" Id. The pending criminal proceeding, involvement of the magistrate, and evidentiary receptivity were central to the court's finding that the proceeding was within the scope of § 1782. Id.

Similarly, in In re Accent Delight Int'l Ltd., 869 F.3d 121 (2d Cir. 2017), a case Koum cites to demonstrate that a French criminal proceeding falls within the purview of § 1782 (see Petitioner Br. at 26-27, ECF No. 12), the Second Circuit affirmed discovery for use in a French criminal proceeding that has been initiated prior to the § 1782 petition. In re Accent Delight Int'l Ltd., 869 F.3d at 125. Similarly, the Monégasque criminal proceeding, for which the discovery was also sought, had been initiated and was pending at the time of the § 1782 petition. Id. at 124-25. A magistrate had been appointed and was overseeing the investigation. Id. at 126. The magistrate affirmed petitioner's ability to submit evidence and petitioner demonstrated the usefulness of the evidence in the Monégasque proceeding. Id. at 126, 132-33. Furthermore, the court emphasized the absence of any allegation of bad faith in permitting discovery to proceed. Id. at 135-36.

11

These cases are inapposite to the facts here. Unlike <u>Berlamont</u> and <u>Accent Delight</u>, here, there is no pending criminal proceeding, no investigating magistrate, and no showing that the discovery sought would be useful in a foreign proceeding. Koum has not identified any charging instrument, nor has he shown that any tribunal stands ready to receive the materials. His application rests entirely on speculative assertions about a contemplated complaint, unsupported by objective indicia. Moreover, unlike the petitioners in <u>Accent Delight</u>, Koum's conduct raises serious concerns of bad faith, underscored by his immediate dissemination of this proceeding to the press and the sweeping nature of the subpoenas, which appear designed to damage reputations and utilize the spectre of a criminal prosecution to gain an improper advantage in the arbitrations rather than support a legitimate adjudicative process. In short, <u>Berlamont</u> and <u>Accent Delight</u> involved concrete, active criminal proceedings with judicial oversight and demonstrated evidentiary relevance. Koum's application, by contrast, is a pretextual fishing expedition lacking any of the statutory prerequisites or judicial safeguards that justified discovery in those cases.

The scope and timing of the Petition juxtaposed with recent events in Europe –two arbitrations ongoing, a third imminent, asset seizure of Koum's superyacht, and Koum's obvious leak to the press about this 1782 proceeding – is powerful evidence that this proceeding must be taken for what it is: a retributive strike by Koum against Tessier for Tessier having lawfully pursued his rights in Europe to collect what is due. Tessier filed proceedings, including two arbitrations in the United Kingdom and one anticipated arbitration in France, that allow for wide ranging discovery. It should be conducted there. The Petition does not even establish when criminal charges will happen or that an investigating magistrate or tribunal stands ready to receive U.S. obtained materials now. In this tenuous and uncertain posture, the "for use" requirement fails.

Even if some marginal overlap with a qualifying "proceeding" and the arbitrations could

be shown, Koum has not established any specific item sought by subpoena is "for use" in the criminal proceeding as opposed to the pending arbitrations. The statute requires more than the possibility that materials might someday be helpful somewhere. It demands a concrete nexus between the evidence sought and an adjudicative forum within § 1782's scope. See Mees, 793 F.3d at 298 (evidence is "for use" in a foreign proceeding where it "will be employed with some advantage or serve some use in the proceeding."). That showing is absent.

Even if the statute's threshold were met, which is not the case for the above reasons stated, the Court should exercise its discretion to vacate the October 3 Order and dismiss the Petition. See Intel, 542 U.S. at 264-65 (identifying four discretionary factors to consider when determining whether to grant § 1782 discovery given that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so"). Koum can seek evidence through arbitral and foreign mechanisms, including Letters Rogatory and securing French investigative orders. There is no demonstrated receptivity of a French tribunal to these particular materials at this stage given the absence of a filed proceeding. Further, the Petition circumvents foreign proof-gathering restrictions and Supreme Court limits on private arbitration discovery. Koum can get what is relevant there. He says he got information through a civil seizure mechanism in France and can do so under French law.

A strong stench of bad faith is evident. Koum's immediate press dissemination to the Daily Mail in the United Kingdom (merely 2 hours after the application was placed before the US Court); thereafter to Boat International in the United Kingdom, the New York Post and ARTNews in the United States; and to Glitz in France, underscores the real risk that § 1782 is being misused to exert public pressure and retaliate amidst ongoing European disputes and the arrest of a super yacht, not to aid a foreign tribunal. (Khan Decl., ¶9). Koum knows Tessier deals with many high

13

profile clients and suppliers and he is thus aiming to purposefully demean his reputation.  The fact that his counsel has captioned this proceeding as an application "to conduct discovery for use in a criminal proceeding against **Remi Tessier and Dernier Etage SARL**," identifying them specifically by name and tied to "use in a criminal proceeding" will inevitably plague them on the internet.[2]  Yet there are no pending proceedings as suggested.

Bad faith is further demonstrated by petitioning for discovery by document demands and audio-video depositions from witnesses who, according to Koum, must be kept anonymous for their sake.  (See Pet. Br. at 4, n.5, ECF. No. 12).  Yet, their names are, at the same time, fully disclosed in the subpoenas filed with the court.  (See Snyder Decl., Exs. 1-6, ECF Nos. 13-1 through 13-6).  There is no good reason for this.  Again, this is no doubt to link Tessier to named galleries and merchants publicly on the internet.  These factors independently weigh in favor of vacatur of the October 3 Order and dismissal of the Petition.

Fed. R. Civ. Pro. 45 and the Intel factors require quashing or at least severe narrowing the subpoenas when they are unduly burdensome or seek confidential commercial information and trade secrets, especially of non-parties.  Intel, 542 U.S. at 265.  The definitions here reach "all communications between You and any third party concerning RTD," implicating confidential business strategies, sourcing, pricing, discount structures, other customers, and sensitive information about the witnesses' businesses and relationship.  (See Snyder Decl., Exs. 1-6, ECF Nos. 13-1 through 13-6).  Koum demands records and metadata that have no demonstrated

---

[2] It is our understanding that naming Tessier and Dernier Etage was both unnecessary and atypical. Indeed, in this country investigatory criminal proceedings are kept secret for good reason.  The association with an individual and even a potential crime can irreparably stain a person's reputation for life.  See In re Petition of Craig, 131 F.3d 99, 102 (2d Cir. 1997) (noting that the tradition of secrecy of grand jury proceedings is based in part on the goal of "protect[ing] [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation") (quoting U.S. v. Proctor & Gamble Co., 356 U.S. 677, 681-82, n. 6 (1958)).

10048063

relevance to any specific claim and plainly risk dissemination of trade secrets under the guise of section 1782 for "use in a foreign criminal proceeding."

The Supreme Court's <u>Intel</u> factors give District Courts broad discretion to deny or tailor § 1782 requests that are unduly intrusive or burdensome. Rule 26 proportionality principles equally apply. <u>See</u> <u>Mees v. Buiter</u>, 793 F.3d 291, 297-98 (2015) ("a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."). On their face, these subpoenas fail those standards.

The requests are sweeping in time, subject matter, and custodial reach. They demand "all documents" across multiple broad categories untethered to any defined issue, time frame, criminal charge, or custodian. Courts routinely trim or quash such dragnet demands, particularly from non-parties. <u>See</u> <u>Intel</u>, 542 U.S. at 265 ("unduly intrusive or burdensome requests may be rejected or trimmed"); <u>see also</u> <u>In re Ex Parte Application of Sylvia Benedek Klein and Eliane Benedek Segal</u>, 20-mc-203 (PKC), 2022 WL 14786787 (S.D.N.Y. Oct. 22, 2022) (denying document requests seeking "extensive and intrusive discovery" from non-party individuals whose connection to the foreign proceedings is "unclear or tangential"); <u>In re Application of Consellior SAS</u>, No. 16mc00400, 2017 WL 449770 (S.D.N.Y. Feb. 2, 2017) (restricting permissible topics to be covered in depositions to be taken pursuant to a § 1782 application to ensure that "the subject matter of the request" is "reasonably tailored to speak to the claims and defenses raised in the proceedings at issue"). Koum makes no particularized relevance showing, failing to explain how any specific category bears on any element in any identified foreign proceeding. Under both § 1782 and Fed. R. Civ. Pro. 26, the proponent bears the burden to connect the dots, a generic assertion that materials "may be relevant" will not do. <u>See</u> <u>In re Ex Parte Application of Ativos</u>

Especiais II, 24-mc-119 (LJL), 2024 WL 4169550, *15 (S.D.N.Y. Sept. 12, 2024) (vacating subpoenas issued under § 1782 where petitioner "provided no basis, beyond conclusory assertions, to believe [relevant] evidence exists or can be found in the requested records").

As stated, the requests target trade secrets and confidential commercial information. Compelling production of such material without stringent necessity, tailoring, and robust protections would cause concrete competitive harm.

Alternative and less burdensome means exist. To the extent Koum convinces the Court he genuinely needs targeted facts for a qualifying proceeding, he can seek them from arbitration, from party witnesses within those tribunals' control, or from public sources. Intel cautions against using § 1782 to circumvent foreign proof-gathering regimes. Intel, 542 U.S. at 265 (urging district courts to "consider whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions" when determine whether a discovery order should be granted).

Koum's request for discovery would likely circumvent French law restrictions on obtaining evidence relevant to this matter. It does so both by seeking substantially the same evidence already collected through an order from the Paris Commercial Court to acquire materials from Dernier Etage's offices, and by attempting to bypass the limitations imposed by that court, since Koum's application is excessively and unnecessarily broad. ( Del Forno Decl., ¶25-29).

Koum concedes discovery can be obtained under proper constraints through Letters Rogatory issued by judicial authorities in Europe. (Fender Decl., ¶24). He says, however, to justify the Petition, that that is a slower process. (Id.). While that may be true, Letters Rogatory are the routine and accepted means of getting foreign discovery, and indeed are very commonly utilized by the French Prosecutors. (Del Forno Decl., ¶21). Significantly, there is no urgency shown. There is no showing that the statute of limitations is at issue or that evidence is only

16

available here, and assuming it is even needed (which is untrue), will be lost. If that is a concern, spoliation letters can be issued to ensure preservation. The Petition and the Declaration of Sara Colorado in Support of Koum's Application for an Order Pursuant to 28 U.S.C. § 1782 ["Colorado Decl."], ECF No 15, are silent on Koum's existing correspondence with the subpoenaed parties. It is likely that Koum has directed Gibson Dunn to contact them. Koum has been contacting, through Gibson Dunn and other representatives, numerous suppliers in France and worldwide demanding documents. (Khan Decl., ¶34-36). In this respect, the Movants in their application to the French Court by summons dated October 2, 2025 are seeking a declaration that Koum and his representatives cease approaching confidential suppliers and defaming the Movants. (See id., ¶38–40). This application was heard *inter partes* on October 2, 2025 before the Judicial Court of Paris. A judgment will be rendered on December 3, 2025. During the French proceeding, Pierre-Emanuel Fender of Gibson Dunn appeared on behalf of Koum, where he argued that Koum and his companies had not been properly served, and raised questions about the French Court's competence. (Id.).

The remaining Intel factors reinforce dismissal. The Respondents are non-parties with no role in the foreign arbitrations; the foreign arbitral tribunals are not § 1782 tribunals; there is no authoritative indication that any qualifying foreign court is receptive to this Court's assistance; and the breadth and sensitivity of the demands reflect a circumvention of foreign limits rather than a tailored need.

### III.

### ALTERNATIVELY, THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO SIGNIFICANTLY NARROW THE SCOPE OF ANY PERMITTED DISCOVERY

Should the Court not dismiss and allow discovery, it should quash the existing subpoenas and require reissuance limited to narrowly tailored requests:

17

(a)    The Court should strictly limit discovery to transactions identified by Koum as being the focus of his investigation to date.  (See Colorado Decl., ¶¶ 21-29, 40-41, 43-44, 50-53).  His Petition identifies specific instances that are alleged to have been unlawful and discovery should be narrowly focused only on those transactions.[3]

(b)    There should be issue-focused production with proportionality built in; no depositions taken unless and until narrowly defined document gaps remain.  (e.g. certificate of business records or similar declaration from the witness is provided to allow for admissibility under French law if that is shown to be needed).

(c)    The Court should enter a stringent protective order: attorneys' eyes only for pricing, supplier, customer, and internal merchant materials, limited exclusively to the contemplated criminal proceedings and not admitted in arbitration.

(d)    There should also be categorical prohibition on dissemination to the press or non-parties.

(e)    The Court should require any further proceedings initiated by Koum in this Court to be filed under seal.

(f)    Finally, if Koum later files a French criminal complaint and a judicial authority accepts it, he may seek leave to modify this Court's order for that narrow purpose of then turning over documents from his New York counsel to the French judicial authority.  Until then, nothing obtained under the subpoenas as modified should be used by Koum or his counsel in any manner or proceeding without leave of court.

---

[3]    Personal data and GDPR are likely implicated by the requests as they now stand.  The requests likely encompass personal data of clients, artisans, and staff in the EU, adding burden and risk.  This further supports narrowing.

18

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant intervention, vacate the October 3, 2025

Order, and dismiss the Petition.  In the alternative, the Court should quash the existing subpoenas

and require any reissued subpoenas for documents to be narrowly tailored and used only as set

forth above.


DATED:  New York, New York               **PORZIO, BROMBERG & NEWMAN, P.C.**
         October 27, 2025


By: _____
     William J. Hughes
     Gary M. Fellner
     Caitlin M. Nolan

     *Attorneys for Movants Remi Tessier and*
     *Dermier Etage SARL*

     1675 Broadway, Suite 1810
     New York, New York 10019-5820
     (212) 265-6888
     wjhughes@pbnlaw.com
     gmfellner@pbnlaw.com
     cmnolan@pbnlaw.com