**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of JAN KOUM for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Criminal Proceeding Against Remi Tessier and Dernier Etage SARL. | Case No. 1:25-mc-00428-JPO |

# MEMORANDUM OF LAW IN OPPOSITION TO REMI TESSIER AND DERNIER ETAGE'S MOTION

## TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

LEGAL STANDARD ..... 9

A. Intervention ..... 9

B. Vacatur of Section 1782 Orders ..... 9

C. Protective Orders ..... 9

ARGUMENT ..... 10

I. Tessier's Motion to Intervene Should Be Denied as Untimely ..... 10

II. This Court Properly Granted Koum's Application and Vacatur Is Unwarranted ..... 13

A. The Application Satisfied Section 1782's Statutory Requirements ..... 14

1. Section 1782 Does Not Require a Pending Foreign Proceeding ..... 15

2. Section 1782 Requires That the Discovery Be "Minimally Relevant," Not Dispositive ..... 16

3. The Discovery is Sought For Use in the French Criminal Proceeding ..... 17

4. Koum Retained Counsel in Anticipation of Filing a Criminal Complaint ..... 19

B. The Discretionary *Intel* Factors Warranted Authorizing Discovery ..... 19

1. French Courts Will be Receptive to Discovery From the Merchants ..... 20

2. Ongoing Arbitrations Between the Parties Do Not Establish Bad Faith ..... 20

3. The Discovery Would Not Circumvent any Evidence-Gathering Rule ..... 22

4. Media Coverage of Tessier's Fraud Does Not Establish Bad Faith ..... 23

5. Koum's Subpoenas Are Narrowly Tailored ..... 23

III. No Protective Order or Restriction on Disclosure is Warranted ..... 25

CONCLUSION ..... 27

## TABLE OF AUTHORITIES

Page(s)

### Cases

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)....................14, 18, 19, 26

*Alahverdian v. Nemelka*,
2015 WL 1276453 (S.D. Ohio Mar. 19, 2015)....................27

*In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc. (Berlamont)*,
773 F.3d 456 (2d Cir. 2014)....................14

*In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*,
2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)....................20

*In re Application of Furstenberg Fin. SAS*,
334 F. Supp. 3d 616 (S.D.N.Y. 2018), *aff'd sub nom. In re Furstenberg Fin. SAS*, 785 F. App'x 882 (2d Cir. 2019)....................15, 16

*In re Application of Mammoet Salvage*,
2025 WL 3009507 (S.D.N.Y. Oct. 28, 2025)....................16, 20

*Automobile Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*,
2014 WL 5315097 (S.D.N.Y. Oct. 17, 2014)....................11

*In re BonSens.org*,
95 F.4th 75 (2d Cir. 2024)....................18

*In re Bourlakova*,
2024 WL 4839047 (S.D.N.Y. Nov. 20, 2024), *aff'd*, 2025 WL 1733495 (2d Cir. June 23, 2025)....................21

*Catanzano by Catanzano v. Wing*,
103 F.3d 223 (2d Cir. 1996)....................10

*In re Chevron Corp.*,
749 F. Supp. 2d 170 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010)....................12

*In re CI Invs. Inc.*,
2023 WL 8643965 (S.D.N.Y. Dec. 14, 2024)....................24

*In re Costa Pinto*,
2022 WL 4088012 (S.D.N.Y. Sept. 6, 2022).....12

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995).....20

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
27 F.4th 136 (2d Cir. 2022).....14

*Flores v. Gonzalez*,
2025 WL 2613030 (S.D.N.Y. Aug. 13, 2025).....26, 27

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014).....9, 10, 12

*Greater Chautauqua Fed. Credit Union v. Marks*,
2023 WL 2744499 (S.D.N.Y. Mar. 31, 2023).....11

*In re Hellard*,
2022 WL 1164628 (S.D.N.Y. Mar. 21, 2022).....12

*In re Hellard*,
2022 WL 2819408 (S.D.N.Y. July 19, 2022).....26

*In re Hornbeam Corp.*,
2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018).....9

*In re Hulley Enters. Ltd.*,
400 F. Supp. 3d 62 (S.D.N.Y. 2019).....19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)..... *passim*

*Kelly v. Jeffries Grp., Inc.*,
2018 WL 8221524 (S.D.N.Y. Oct. 25, 2018).....10, 26

*In re Kuwait Ports Auth.*,
2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021).....15

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006).....23

*Malmberg v. United States*,
2010 WL 1186573 (N.D.N.Y. Mar. 24, 2010).....9

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015).....17, 19, 24

*In re Navios S. Am. Logistics Inc.*,
2025 WL 369717 (S.D.N.Y. Feb. 3, 2025)....................24, 25

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1978)....................27

*Playboy Enters., Inc. v. Dumas*,
960 F. Supp. 710 (S.D.N.Y. 1997)....................17

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
2014 WL 5420225 (S.D.N.Y. Oct. 24, 2014)....................24

*In re Republic of Turkiye*,
2025 WL 2200159 (S.D.N.Y. Aug. 1, 2025)....................9

*In re Sargeant*,
278 F. Supp. 3d 814 (S.D.N.Y. 2017)....................16

*In re Sept. 11 Litig.*,
262 F.R.D. 274 (S.D.N.Y. 2009)....................10, 26

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993)....................25

*In re Top Matrix Holdings Ltd.*,
2020 WL 248716 (S.D.N.Y. Jan. 16, 2020)....................15

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994)....................12

*United States v. Salameh*,
992 F.2d 445 (2d Cir. 1993)....................27

*US Bank Nat. Ass'n v. PHL Variable Ins. Co.*,
2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012)....................26

*In re Zarzur*,
2024 WL 4664721 (S.D.N.Y. Aug. 22, 2024), *R&R. adopted*, 2025 WL
1101475 (S.D.N.Y. Apr. 14, 2025)....................11, 13

*ZF Automotive US, Inc. v. Luxshare, Ltd.*,
596 U.S. 619 (2022)....................20, 21

*In re Zouzar Bouka*,
637 F. Supp. 3d 74 (S.D.N.Y. 2022)....................19

**Statutes**

28 U.S.C. § 1782.................... *passim*

## Other Authorities

Danica Coto, *US federal judge allows attorneys to subpoena financial records in Antigua yacht case*, APNEWS.COM (Mar. 17, 2025) ....23

Poppy McPherson, *U.S. court orders Facebook to release records of anti-Rohingya content for genocide case*, REUTERS.COM (Sept. 23, 2021) ....23

## Rules

Fed. R. Civ. P. 24 ....9

Fed. R. Civ. P. 26 ....9

L.R. 6(1)(b) ....11

## INTRODUCTION

There is no basis—legal, factual, or equitable—to vacate this Court's October 3, 2025 Order granting discovery under 28 U.S.C. § 1782. The Order was properly entered, supported by a substantial evidentiary record, and has already begun to fulfill its intended purpose. Even the limited documents produced pursuant to that Order—before the Court's temporary stay last week—confirm the fraud the discovery was designed to uncover. Those materials provide additional evidence of Tessier's pattern of deception, overbilling, and falsified documentation. His motion to intervene and vacate is not a good-faith effort to vindicate any right; it is a transparent attempt to delay, obstruct, and conceal.

The record is overwhelming. Tessier—a French interior designer long entrusted with managing major projects for Jan Koum—systematically abused that trust to enrich himself. The documents obtained through the subpoenas this Court authorized and other evidence show that Tessier falsified and fabricated invoices, erased legitimate discounts, and manipulated supplier records to disguise inflated prices. The fraud is not conjectural; it is captured in black and white in the very records already produced under this Court's lawful authority.

For nearly a decade, Tessier engineered a pattern of deception to misappropriate millions of Euros by:

- Inflating invoices and concealing genuine discounts;
- Substituting inferior goods for bespoke pieces;
- Passing off reproductions as originals;
- Double-billing multiple clients for identical items; and
- Pocketing undisclosed kickbacks from suppliers while falsifying documentation to conceal them.

For example, Tessier charged Koum €18,920 for two chairs from one of the subpoenaed

merchants, plus a €2,838 markup. Weeks before the Court entered a stay, however, that merchant produced a smoking-gun invoice establishing that Tessier paid only $16,000 (or the equivalent of only €15,145) for those same chairs. That original record from the merchant confirms Tessier rendered a fraudulent invoice to Koum, falsifying the price Tessier paid for the chairs and charging Koum a markup based on that inflated price. In another instance, Tessier billed Koum $101,330 for lighting fixtures while concealing a 20 percent supplier discount, altering totals and adding a fictitious line item on his invoice. These falsifications are not anomalies—they are the operational mechanics of a sustained and calculated fraud.

When first confronted, Tessier did not deny, justify, or attempt to correct his misconduct. He refused to produce authentic records, obstructed inquiries, and pressured third parties not to cooperate. That obstruction continues with this motion. Nearly a month after this Court authorized discovery, Tessier belatedly seeks to intervene and vacate the Order. This tardy motion is transparently a tactic to delay and buy time to transfer assets from France to Monaco to evade enforcement of any eventual criminal judgment. His gambit has failed. Just two days ago, a French court ruled in favor of Koum, temporarily blocking the exchange of consideration for Tessier's attempted asset transfer. And notably, in this Court, Tessier still does not deny, refute, or even attempt to explain the extensive wrongdoing fully documented in the record. His conduct speaks for itself.

Koum intends to and will initiate criminal proceedings against Tessier in France. Koum has already retained French counsel, including Gibson Dunn and noted criminal attorney Thierry Marembert. With counsel, Koum has identified specific violations of French law he will pursue, and he has carried out an extensive investigation to uncover further evidence of Tessier's fraud and prepare his case. The six merchants subpoenaed in this proceeding (the "Merchants") hold

contemporaneous invoices, correspondence, and transaction records material to proving the full scope of Tessier's misconduct and holding him accountable in the French criminal proceedings. The Merchants' partial productions—secured pursuant to this Court's October 3 Order—have already confirmed at least one brazen instance of falsification of business records, price inflation, and discount concealment. That smoking-gun evidence not only proves on its own Koum's allegations but also underscores that the discovery authorized by this Court was both necessary and effective—serving precisely the purpose Congress intended in Section 1782.

Tessier identifies no procedural flaw, statutory defect, or equitable ground to disturb the Court's Order. His vague allegations of "bad faith" collapse under the weight of the record and binding Supreme Court and Second Circuit case law. The discovery this Court authorized is lawful, targeted, and relevant to the French proceedings. To vacate the Order now—after it has already yielded direct, corroborated proof of fraud—would reward obstruction and undermine the integrity of this Court's process. ***On this record, the Court should deny Tessier's motion without waiting for a reply. At minimum, the Court should lift the stay to allow discovery to resume apace.***

The record establishes a clear and continuing need for discovery under Section 1782. The evidence already obtained—falsified invoices, doctored documents, concealed discounts, and Tessier's conspicuous silence—demonstrates a deliberate, far-reaching scheme to defraud and conceal. His motion is not a defense; it is an act of evasion—another sloppy attempt to prevent the facts of his fraud from coming to light and to buy him time to abscond from France. It should be denied in its entirety, and discovery should proceed without further delay or interference.

## FACTUAL BACKGROUND

Jan Koum is the co-founder and former CEO of WhatsApp. Dkt. No. 12 ("Br.") at 6-8. Remi Tessier is a prominent French interior designer who caters to a small group of high-net-worth

clientele. *Id.* They began working together in 2015. *Id.* This was the beginning of what Koum believed, until recently, was a mutually beneficial and honest professional relationship. *Id.* Over nearly a decade, Koum retained Tessier as lead designer on at least nine projects including residences across Europe and the U.S. and two yachts. *Id.* Across all projects, Koum entrusted Tessier with designing interiors and procuring furnishings totaling tens of millions of dollars. *Id.*

In 2024, Koum began to suspect Tessier of wide-ranging, long-running fraud. *Id.* at 10. When Koum's chief financial officer undertook a fresh review of Koum's accounts, she detected irregularities in the goods Tessier procured and prices he charged. *Id.* With suspicions raised, Koum initiated a broader investigation into Tessier's transactions. *Id.* Koum discovered that Tessier, capitalizing on the trust and discretion Koum placed in him, took every opportunity to line his own pockets at Koum's expense. *Id.* at 10-11. For years, Tessier ran a multi-front scheme across purchases large and small to squeeze unearned profit for himself—inflating prices, misrepresenting the true origins and value of the goods he sourced for Koum, obfuscating the quantity of items he purchased for Koum, and extracting secret kickbacks. *Id.*

At every step, Tessier has acted to block Koum from accessing the truth. Koum initially asked Tessier to provide records and information about the transactions he undertook for Koum. *Id.* at 16. Tessier refused. *Id.* At first, Tessier just failed to substantively respond to repeated requests for documents from Koum's accountants. Then, he made excuses. *Id.* When Koum continued to push for records, Tessier begrudgingly provided a handful of what he claimed were merchant invoices. *Id.* at 17.

Unbeknownst to Tessier, Koum had simultaneously been working to obtain invoices directly from merchants. *Id.* Upon comparing Tessier's documents with authentic merchant records, Koum discovered Tessier had materially (and sloppily) altered the originals to cover his

tracks. *Id.* Tessier's changes were hardly subtle: he altered the discounts he had received from merchants, changed line-item prices and total prices merchants had charged him, and in some cases, introduced obvious formatting differences between original and doctored invoices, such as changing the number of pages on an invoice and introducing typos. *Id.* at 17-19.

Tessier went further still in obstructing Koum's investigation. *Id.* at 20. Upon learning Koum had started contacting merchants directly, Tessier employed a bevy of tactics to impede Koum's efforts to learn the truth. *Id.* Tessier invoked confidentiality agreements with merchants, threatened them legally or financially, and otherwise pressured them to withhold documentation from Koum. *Id.* at 20-21. Several merchants told Koum they could not voluntarily provide Koum information because of Tessier's instructions. *Id.* at 21. Tessier even filed suit in France to try to seek to bar Koum from contacting suppliers to seek their voluntary production of records relating to purchases Tessier made for Koum. Supplemental Declaration of Pierre-Emmanuel Fender ("Fender Suppl. Decl.") ¶ 5.

In July 2025, Tessier's company, Dernier Etage, initiated two arbitrations in London seeking to compel Koum's affiliated companies to continue paying fees despite Dernier Etage's ongoing fraud and breaches of contract, among other claims. *Id.* at 21 n.22; Declaration of Penny Madden ("Madden Decl.") ¶¶ 9, 21-22. Those arbitrations are proceeding under English law. Madden Decl. ¶¶ 2, 6–8, 17.[1] They involve distinct contractual relationships, and neither Koum nor his affiliated entities, other than the two named in the arbitrations, are parties. *Id.* ¶¶ 13, 24.

In addition to the arbitrations against Koum, Tessier began working in July to abscond from France. He first changed his company's name and then purported to sell its assets to a newly-

[1] Tessier argues the Court should also consider a third, supposedly "imminent," arbitration to be filed in France. Mot. 6. That potential arbitration is irrelevant. *Infra* 20-22.

formed entity in Monaco—one that he believed would give him greater protection from French (and arbitral) justice. Dkt. No. 15 (Declaration of Sara Colorado ("Colorado Decl.")) ¶ 73. Tessier took these actions only after he learned of Koum's investigation into his fraud. *See id.* Though Koum and Tessier still had active contracts together, Tessier did not inform Koum of the new company name or the fraudulent asset conveyance. *Id.* And just days ago, a French court prevented the exchange of consideration for Tessier's attempted asset transfer in litigation Koum brought. Fender Suppl. Decl. ¶ 23.

Faced with Tessier's obstruction and concealment, Koum turned to compulsory legal process to seek the information necessary to uncover Tessier's deception. In July 2025, Koum sought and obtained an order in Paris Commercial Court authorizing the search of Tessier's Paris office and seizure of records related to Tessier's work on certain design projects for Koum. *Id.* at 5; Dkt. No. 14 (initial declaration of Pierre-Emmanuel Fender ("Fender Original Decl.")) ¶ 9; Dkt. No. 14-1 (court order). On September 15, 2025, the French authorities executed the search and seizure. Br. at 5. Once again, Tessier acted to prevent Koum from accessing the truth, challenging the seizure to prevent Koum from reviewing the evidence obtained. Tessier's challenge is scheduled for a hearing in January 2026, and the materials recovered were placed under provisional sequestration pending that hearing. Fender Suppl. Decl. ¶ 17.

Over the course of his investigation and based on his initial findings, Koum has determined that Tessier's deceit was not only unfair and unprofessional—it was criminal under French law. Concerned that Tessier posed a threat to others, Koum determined to pursue criminal charges in France. To that end, in July 2025, Koum began to work with Gibson Dunn attorneys in France to begin to prepare a criminal complaint against Tessier. And prior to filing his 1782 Petition, Koum retained Thierry Marembert, a French attorney who specializes in white-collar criminal matters,

to serve as co-counsel. Fender Original Decl. ¶ 12; Declaration of Thierry Marembert ("Marembert Decl.") ¶ 2. Together, Gibson Dunn and Marembert have made substantial progress preparing the French criminal complaint. *Id.*

On September 29, 2025, Koum filed this Section 1782 proceeding, seeking authorization from the Court to serve subpoenas on six Merchants in this District from whom Tessier regularly purchased art, furniture, and design materials for Koum. Contrary to Tessier's Motion (at 3), Koum filed the Application on notice—not *ex parte*—and promptly worked to serve the Merchants. Dkt Nos. 18-21 (certificates of service).[2] Koum's proposed subpoenas sought three limited categories of documents: (1) records of transactions or interactions with RTD, including invoices, receipts, payment records, and records of commissions, fees, or incentives; (2) communications between the Merchants and Tessier, including those regarding procurement, pricing, quotes, discounts, commissions, incentives, and substitution or replacement of goods relating to purchases RTD made for Koum or his projects, or "any effort by RTD to avoid, prevent, or limit disclosure of information to" Koum; and (3) communications with third parties concerning Tessier.[3] Dkt. No. 13 (original declaration of Orin Snyder ("Snyder Original Decl.")), Ex. 1.

This sought discovery is narrowly tailored to allow Koum to obtain the original, contemporaneous records of Tessier's transactions with these merchants and to compare them to the representations he made to Koum, and in some cases, to the doctored versions of the same

---

[2] Four of the six Merchants were served the Application and its supporting papers on September 30, 2025. *See* Dkt. Nos. 18-21. One of the merchants was served on October 30, via service on the New York Secretary of State. Dkt. No. 26. Despite Koum's diligent efforts, the last Merchant has yet to be served because the merchant appears to have moved to an undisclosed location.

[3] The subpoena also requests communications referring to "Seven Oceans," "Mario Gazzola," or any affiliate of that entity or individual. On information and belief, Tessier directed that kickback payments from at least one subpoenaed merchant be routed to Seven Oceans, an entity in the British Virgin Islands that is associated with Mario Gazzola—the CEO of Remi Tessier Design USA, who appears to be or have been under federal criminal investigation. Colorado Decl. ¶¶ 76-77.

records Tessier provided to Koum. For example, invoices already obtained from one merchant show that Tessier purchased a luxury barber chair for €10,786.50 after a 15% discount, but then invoiced Koum €17,000 *before* applying his 15% contractual markup—charging Koum more than €7,000 what he should have paid. Colorado Decl. ¶ 21. This is precisely the type of misconduct the subpoenas are designed to uncover: concealed discounts, inflated invoices, and undisclosed kickbacks that can only be verified through merchants' own records. Side-by-side comparisons of the original merchant records and Tessier's oft forged and doctored documents will be key evidence of Tessier's fraud in the contemplated French Criminal Proceeding.[4]

On October 3, 2025, this Court granted the Application, and authorized Koum's counsel to serve subpoenas to the Merchants. Dkt. No. 17 (the "Order"). Koum promptly attempted to do so, and five Merchants have now been served. Koum's counsel has since engaged in constructive discussions with the five served Merchants. Where appropriate, Koum has agreed to narrow the scope of information initially requested, and the subpoenaed Merchants have begun to gather and produce relevant records. Supplemental Declaration of Orin Snyder ("Snyder Suppl. Decl.") ¶ 3. To date, none of the Merchants has raised concerns about producing sensitive or trade secret information, and when they have raised burden concerns, Koum's counsel has worked with them in good faith to mitigate the issue. *Id.*

Nearly a month after Koum filed the Application, and more than three weeks after this Court issued the Order, Tessier moved to intervene and request vacatur of the Court's Order, dismissal of the Application, or in the alternative, a protective order that would shroud this litigation and the authorized discovery from public view. More than a week later, Tessier moved

---

4 Upon denial of Tessier's Motion, Koum may file an additional request with this Court seeking discovery from RTD's U.S.-based affiliate, which is located in this District and which appears to be connected to Tessier and his associate Gazzola. Colorado Decl. ¶ 77; *see also supra* n.3.

to stay discovery pending resolution of the Motion, which the Court granted that day. Dkt. Nos. 30-31. Koum immediately halted his pursuit of discovery from the six Merchants.

## LEGAL STANDARD

### A. Intervention

Federal Rule of Civil Procedure 24 governs intervention. "To be granted intervention as of right or by permission, 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014). The Second Circuit has "underscored that a failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Id.*

### B. Vacatur of Section 1782 Orders

A movant seeking to vacate a Section 1782 order must establish that the original 1782 Application failed to satisfy the statute's requirements or that discovery was improperly authorized in light of the discretionary factors. *In re Republic of Turkiye*, 2025 WL 2200159, at *6 (S.D.N.Y. Aug. 1, 2025). Courts consider whether any "newly presented material facts" lead it to alter its initial view and conclude the requirements of Section 1782 are not met. *In re Hornbeam Corp.*, 2015 WL 13647606, at *4 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018).

### C. Protective Orders

Under Federal Rule of Civil Procedure 26, a movant has standing to seek a protective order over a non-party subpoena only if he can demonstrate the response would implicate a "personal privilege or right" of the movant. *Malmberg v. United States*, 2010 WL 1186573, at *1 (N.D.N.Y. Mar. 24, 2010). Where standing is established, courts may issue protective orders over discovery for good cause, which exists "when a party shows that disclosure will result in a clearly defined,

specific and serious injury." *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009). "If the moving party establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Kelly v. Jeffries Grp., Inc.*, 2018 WL 8221524, at *2 (S.D.N.Y. Oct. 25, 2018).[5]

## ARGUMENT

The Court should deny Tessier's Motion to Intervene—first and foremost because it is untimely. If he is allowed to intervene, the Court should reject his request to vacate the Order because his Motion fails to provide any legitimate basis to overcome Koum's entitlement to Section 1782 discovery. The Court should also reject Tessier's alternative requests for a protective order and related relief because he fails to identify any authority that entitles him to dictate the terms of this discovery, either on his or the Merchants' behalf.

### I. Tessier's Motion to Intervene Should Be Denied as Untimely

Tessier's motion to intervene fails on the threshold requirement of timeliness, and the Court should deny it on that ground alone. Four factors help courts determine whether a motion to intervene is timely: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd*, 770 F.3d at 1058. Each factor weighs against Tessier's intervention.

***1. Delay.*** Tessier waited too long before moving to intervene. The length of time the movant waited is among "the most important factors in a timeliness decision," *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996), and it must be assessed in the context of

[5] Unless noted, internal quotations and citations omitted throughout.

"the stage of the proceeding at which [the movant] seeks to intervene," *Automobile Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 2014 WL 5315097, at *2 (S.D.N.Y. Oct. 17, 2014). Courts in this District "start the clock for intervention from the moment when the movants know or have reason to know that their interests are threatened, not necessarily when the district court grants the discovery motion." *In re Zarzur*, 2024 WL 4664721, at *4 (S.D.N.Y. Aug. 22, 2024), *R&R. adopted*, 2025 WL 1101475 (S.D.N.Y. Apr. 14, 2025). Here, the clock started on September 29, 2025, the day Koum filed his Application. That same day, as Tessier concedes, broadly published news articles reported on the Application. Snyder Suppl. Decl. ¶ 6, Ex. 3. Tessier almost certainly learned of the Application immediately, and he does not suggest otherwise. He was at least on constructive notice by the end of September. *Zarzur*, 2024 WL 4664721 at *4.

Tessier was required to act promptly. He did not. Because a Section 1782 application is effectively a motion, this Court's rules require a noticed party to oppose the Petition within 14 days—or here, by October 13. S.D.N.Y. Local Rule 6(1)(b). Yet Tessier did nothing. He could have (but did not) file a letter motion seeking more time to oppose. He could have (but did not) reach out to Koum's counsel to negotiate an orderly briefing schedule. Instead, he waited until October 28, 2025 to file his motion—weeks after Koum had served subpoenas and discovery had commenced. *See* Snyder Suppl. Decl. ¶ 2. Even after this Court granted the Petition on October 3, 2025, Tessier waited ***almost a month*** before moving to vacate. In the context of a discovery motion—particularly one that has already been resolved and where discovery has commenced—a month-long delay is dilatory. *See, e.g.*, *Greater Chautauqua Fed. Credit Union v. Marks*, 2023 WL 2744499, at *7 (S.D.N.Y. Mar. 31, 2023) (motion to intervene was denied because proposed intervenors "delayed unreasonably" in filing their motion by waiting one month to contest preliminary injunction).

Tessier offers no excuse for his delay. He simply proclaims that "[i]ntervention is timely and necessary." Mot. 7. That is insufficient. Even if Tessier required additional time to file an opposition to the Application, he could have submitted a letter motion seeking to intervene immediately upon learning of the filing or negotiated for an extended briefing schedule. *See, e.g.*, *In re Costa Pinto*, 2022 WL 4088012, at *3 (S.D.N.Y. Sept. 6, 2022). Tessier's French and U.K. counsel have been in active communication with Gibson Dunn relating to the parties' ongoing disputes. Snyder Suppl. Decl. ¶ 5. But at no time did Tessier or his counsel suggest he intended to oppose this proceeding. *Id.* Instead, he sat on his hands while Koum implemented the Court's Order in good faith.

***2. Prejudice to Koum.*** Koum would face significant prejudice if the Court permits Tessier's delayed intervention. *See Floyd*, 770 F.3d at 1058. Koum has already served multiple subpoenas, conferred with certain of the Merchants' counsel, and begun receiving documents. Snyder Suppl. Decl. ¶¶ 2–3. Among those documents is a smoking gun—an invoice indisputably establishing that Tessier inflated the price of two designer chairs he purchased on Koum's behalf, secretly pocketing thousands of Euros in the process. *See id.* ¶ 4, Ex. 1. Allowing Tessier to intervene at this stage would require the parties to backtrack and waste already expended resources. *Compare United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 72 (2d Cir. 1994) (denying intervention because it would "wast[e] the fruits of lengthy negotiations" and prejudice the existing parties), *with In re Hellard*, 2022 WL 1164628 at *2 (S.D.N.Y. Mar. 21, 2022) (allowing intervention because discovery had not commenced).

Tessier's intervention would also "further delay [] obtaining the materials in a circumstance in which time is of the essence." *In re Chevron Corp.*, 749 F. Supp. 2d 170, 187 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010). That is

particularly true here because Tessier has been working to shield himself from financial consequences and responsibility by seeking to exfiltrate his assets to Monaco. Colorado Decl. ¶ 73; Fender Suppl. Decl. ¶ 23. Any further delay could give Tessier more time to cover his tracks, which could prejudice Koum's ability to seek justice.

***3. No Prejudice to Tessier.*** Tessier can claim no legitimate prejudice if the Court denies intervention. Tessier will be "prejudiced" by denial of his Motion only if the discovery Koum seeks reveals that Tessier committed fraud and other crimes. The discovery process this Court authorized on October 3 will otherwise impose no other practical burdens on him. But his diminished ability to shroud the truth is not prejudice that justifies letting him interfere with these proceedings—particularly when his delay is self-imposed. *Zarzur*, 2024 WL 4664721 at *6 (chastising the proposed intervenors' "wait and see approach to litigation").

## II. This Court Properly Granted Koum's Application and Vacatur Is Unwarranted

If the Court allows Tessier to intervene, it should deny his motion to vacate. Tessier has offered no valid argument for disturbing the Court's October 3 order.

Section 1782(a) imposes three statutory requirements, each of which this Court correctly determined the Application satisfied. *First*, the applicant must be an "interested person" in the foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004). *Second*, the discovery target must reside or be found in this district. *Id.* *Third*, the discovery must be sought for use in a foreign judicial proceeding that is pending or reasonably contemplated. *Id.* Where, as here, all three statutory requirements are met, the court considers four discretionary factors: (i) whether the discovery target is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding, and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or

burdensome. *Id.* at 264–65. The Second Circuit has cautioned that these considerations should not impose "extra statutory barriers to discovery into 1782." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022).

This Court correctly determined that discovery from the six Merchants that operate in this District satisfies these standards. Tessier's motion does not show otherwise.

**A. The Application Satisfied Section 1782's Statutory Requirements**

Koum's Application easily met each of the Section 1782 statutory requirements. Tessier does not dispute that Koum qualifies as an "interested person" or that the subpoena targets "reside or [are] found" in this District. *Intel*, 542 U.S. at 249; *see* Br. 25-26. Koum also demonstrated—through his counsel's sworn declarations—that he intends to use the sought discovery in a criminal proceeding he will initiate against Tessier in France that is (1) adjudicative; (2) reasonably contemplated; and (3) accepting of the discovery for Koum's intended use. Br. 26-27.

Koum's Application cited Second Circuit case law demonstrating that the specific French criminal proceedings he intends to pursue are adjudicative and qualify for Section 1782 discovery. *See* Br. 26 (citing *In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc. (Berlamont)*, 773 F.3d 456, 458 (2d Cir. 2014) (holding that foreign criminal investigatory proceedings before a magistrate are adjudicatory); *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 124-27 (2d Cir. 2017) (holding French criminal proceedings qualify)). Koum also detailed the concrete steps he has taken to prepare for initiating the proceeding, including conducting a factual investigation, hiring French counsel, and instructing counsel to draft a criminal complaint. Br. 21 (citing Fender Original Decl. ¶¶ 8-12). Tessier even concedes the evidence Koum has collected so far is enough to support criminal charges—confirming the reasonably contemplated nature of the French criminal case. Mot. 10. Koum next explained in detail how he would use the specific discovery sought in those proceedings. Br. at 27; Fender

Original Decl. ¶¶ 25-27.

Courts routinely authorize Section 1782 discovery on similar showings. *See, e.g.*, *In re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619 (S.D.N.Y. 2018), *aff'd sub nom. In re Furstenberg Fin. SAS*, 785 F. App'x 882 (2d Cir. 2019) ("[A]pplicants carried their burden of showing that a foreign proceeding is within reasonable contemplation by filing declarations swearing that they intend to file a criminal complaint against the movant, and articulating a specific legal theory on which they intend to rely."); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (similar).

Tessier advances four tangled—and frivolous—arguments to claim that the French Criminal Proceeding is not "reasonably contemplated." Each misapprehends the Section 1782 standard and none provides a basis to vacate the Court's Order.

**1. Section 1782 Does Not Require a *Pending* Foreign Proceeding.**

Tessier is wrong that a foreign proceeding is not reasonably contemplated if there is no "charging instrument," "schedule," or docket number, Mot. 9. The Supreme Court made clear two decades ago that a foreign proceeding need only be "within reasonable contemplation" to qualify for discovery under Section 1782. *Intel*, 542 U.S. at 259. As the Supreme Court explained, Congress intentionally removed the word "pending" from Section 1782 in 1964, eliminating any statutory requirement that the foreign proceeding be actually "pending" or even "imminent." *Id.* Tessier ignores this established Supreme Court authority.

As Tessier's own lead case (Mot. 9) confirms, an applicant proves that foreign proceedings are in reasonable contemplation through exactly the type of "objective indicium" Koum presented: sworn statements indicating that the petitioner has conducted an investigation, hired a criminal lawyer, and "said counsel has begun preparing the necessary pleadings for the" proceeding, *In re Kuwait Ports Auth.,* 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021); *see also Furstenberg Fin.*

*SAS*, 334 F. Supp. 3d at 619; Br. 21-22. That case, *In re Sargeant*, rejected a 1782 application where the applicant explicitly stated he was seeking discovery to determine whether he "may have causes of action" in one or another jurisdiction. 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017). The court ruled that the 1782 request was "premature" because this "entirely embryonic" notion of a potential proceeding did not amount to "reasonable contemplation." *Id.* Koum, by contrast, is not seeking evidence to "assess whether to initiate actions" in some jurisdiction at some point, *id.* at 823–24—he is already determined to act and is actively taking concrete steps to do so, Fender Original Decl. ¶¶ 1, 8-12; Marembert Decl. ¶¶ 2, 34.

**2. Section 1782 Requires Discovery To Be "Minimally Relevant," Not Dispositive**

Tessier wrongly attacks the discovery sought as not "critical to the filing of his criminal complaint in France," largely because Koum has already collected some evidence, could collect more through letters rogatory, and because French prosecutors may be able to collect their own. Mot. 9, 13, 16. But that is not the legal standard: a Section 1782 applicant "must demonstrate merely that the information is *minimally relevant* to the foreign proceeding," not that it is absolutely critical or that it could never be obtained another way. *In re Application of Mammoet Salvage*, 2025 WL 3009507, at *12 (S.D.N.Y. Oct. 28, 2025) (emphasis added).

Koum's application easily meets that standard, showing that the records he seeks from the Merchants in this District are material to the charges Koum intends to bring against Tessier. *See supra* 7-8; Br. 10-16. The original records from the Merchants will, among other things, permit side-by-side comparisons with Tessier's invoices to reveal the extent of Tessier's fraud. Documents produced in discovery—before the Court entered a stay—have already done exactly that. A Merchant-produced invoice confirms one of Tessier's many schemes by establishing that he fraudulently overbilled Koum by deliberately removing from the invoice he provided that he

had received a discount. Evidence establishing that criminal fraud is indisputably "relevant" and appropriate "for use" in a case against Tessier for criminal fraud.

**3. The Discovery is Sought For Use in the French Criminal Proceeding**

Tessier next says the Order was improper because no foreign tribunal is "ready to receive the materials" or "has asked for assistance." Mot. 9, 12. No such request is required—nor would such a requirement make sense given the Supreme Court's holding that foreign proceedings need not be actually pending to warrant Section 1782 relief. *Intel*, 542 U.S. at 259; *supra* 15. Instead, as the Second Circuit has held, discovery must merely be sought for "some advantage" or "some use" in contemplated proceedings. *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Tessier does not even attempt to dispute Koum meets that standard here.

Although not discussed in Tessier's Motion, Tessier's French declarant opposes Section 1782 discovery because, he claims, the materials Koum seeks may not ultimately be used in any French adjudicative tribunal. According to the French declarant, the criminal proceeding against Tessier may proceed through an *enquête préliminaire* (preliminary investigation), spearheaded by a prosecutor, instead of directly to an investigating magistrate (*juge d'instruction*). Del Forno Decl. ¶¶ 10-12. Tessier's declarant then claims that if Koum's complaint proceeds as an *enquête préliminaire*, "no court will be appointed to rule on the matter until the end of the investigation" and as a victim, Koum would "not [be] allowed to participate in the investigation." *Id.* ¶¶ 10-11.

Even if this argument were preserved—it is not[6]—it would be irrelevant. To justify Section 1782 relief, Koum need not prove the evidence he seeks is guaranteed to be admitted into evidence in a foreign trial. Rather, Koum needs to identify a "procedural mechanism by which to inject the

[6] Arguments not raised in an opening brief "need not be considered by a court." *Playboy Enters., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997).

discovery into foreign proceedings" in some way and at some stage. *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024).[7]

Koum easily meets that standard. After Koum initiates proceedings by filing his evidence as part of a criminal complaint (*plainte simple*), there are various paths the proceeding may take—any of which will allow Koum to present his evidence to a judge. If the proceedings begin with a prosecutor-lead *enquête préliminaire*—as Tessier's counsel argues is likely—Koum would be permitted to submit evidence. Marembert Decl. ¶ 19. The prosecutor will either bring charges, or decline to do so, at which point Koum may independently compel the appointment of an investigating judge by filing a *plainte avec constitution de partie civile*, thus becoming a formal party (*partie civile*). Marembert Decl. ¶ 7–10. Alternatively, the case will proceed directly to an investigating judge (*juge d'instruction*) based on the prosecutor's spontaneous referral. Koum may participate in the proceedings before the investigating judge, including by submitting the evidence collected through this Application. Fender Suppl. Decl. ¶ 15; Marembert Decl. ¶ 9. If either the prosecutor or the investigating judge brings charges, Koum will have standing to participate at trial, including by introducing evidence. Marembert Decl. ¶¶ 9, 19. Even if the investigating judge decides not to bring charges, Koum will be permitted to appeal. Fender Original Decl. ¶¶ 15-16; Marembert Decl. ¶ 10. The materials Koum seeks therefore "are to be used at some stage of a foreign proceeding." *Mees*, 793 F.3d at 295 (emphasis added); *see also In re Accent Delight*, 869 F.3d at 132 (finding sufficient that a petitioner "retain[ed] the procedural

[7] Tessier's recent filing of litigation in French courts against Koum provides another adjudicative proceeding in which the materials Koum seeks in this proceeding can be used. *See* Khan Decl. ¶ 36. Evidence of Tessier's fraud obtained as part of this Section 1782 proceeding would also be admissible in that case and would independently justify relief here—mooting Tessier's arguments about the extent to which the French Criminal Proceedings are sufficiently reasonably contemplated. Fender Suppl. Decl. ¶ 7.

right to submit the requested documents to the magistrate overseeing the investigation").[8]

### 4. Koum Retained Counsel in Anticipation of Filing a Criminal Complaint

Tessier spends a full page of his Motion asserting that one of Koum's French lawyers—Pierre-Emmanuel Fender—does not specialize in criminal law. Mot. 9. Tessier suggests Fender's practice belies Koum's intent to launch criminal proceedings. *Id.* Tessier cites no authority for this frivolous argument. Fender has over twenty years of experience as a top litigator handling complex cross-border commercial disputes and high-profile white-collar investigations. His background enables him to expertly opine on the procedural and substantive elements of French criminal law.

Regardless, even before Koum commenced this proceeding—and well before Tessier filed his motion—Koum had already retained a leading French criminal lawyer, Thierry Marembert.[9] *See* Marembert Decl. ¶ 2; *see also* Fender Original Decl. ¶ 12. Fender and Marembert are co-counsel and have engaged in extensive research and fact investigation. *See* Marembert Decl. ¶¶ 2, 25-29. Their efforts have identified at least three specific French Code sections that Tessier violated. *See* Fender Original Decl. ¶ 11 (detailing the fraud, breach of trust leading to embezzlement, and deception claims); Marembert Decl. ¶¶ 26, 28-30.

## B. The Discretionary *Intel* Factors Warrant Discovery

The *Intel* discretionary factors likewise weighed in favor of Koum's Application: (1) the

---

8 Tessier and his declarants separately challenge the merits of Koum's French legal theories and the admissibility of the evidence he intends to introduce. Those inaccurate arguments, *see* Marembert Decl. ¶¶19-32, are irrelevant. Courts in Section 1782 proceedings do not address the substantive merits of the underlying proceedings. *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019); *In re Zouzar Bouka*, 637 F. Supp. 3d 74, 83 (S.D.N.Y. 2022); *In re Accent Delight*, 869 F.3d at 132.

9 Marembert is widely acknowledged to be one of—if not the—premier criminal attorneys in France. *See* Marembert Decl., Ex. 1 (stating that Marembert is a "highly regarded white-collar lawyer" who is in the "Hall of Fame" for being "at the very top of the profession").

Merchants will not be participants in the French Criminal Proceeding; (2) French courts are receptive to the evidence Koum will obtain; (3) Koum seeks evidence in good faith for use in the French Criminal Proceeding, and not to circumvent any foreign evidence gathering restrictions; and (4) the subpoenas are narrowly tailored to seek records that will be critical in the case against Tessier. *See* Br. 28-30. The record and the law overcome each of Tessier's arguments on these factors.

**1. French Courts Will be Receptive to Discovery From the Merchants**

Tessier's conclusory assertion (Mot. 13) that there is "no demonstrated receptivity of a French tribunal to these particular materials at this stage" is wrong under *both* U.S. and French law. "French courts have expressly held that parties may introduce evidence obtained through United States discovery mechanisms such as Section 1782" in judicial investigations and criminal trials. Fender Original Decl. ¶ 31 (citing cases); Marembert Decl. ¶¶ 22-23. Tessier presents nothing in the way of the "authoritative proof that a foreign jurisdiction would reject § 1782 assistance" that is needed to rebut the presumption that the foreign court would be receptive. *In re Application of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012). Rather, his arguments appear (without any good-faith basis) to simply ignore binding Second Circuit case law. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) (rejecting argument that "French judicial, executive or legislative bodies" would "object[] to foreign discovery assistance" under Section 1782); *see also Mammoet Salvage*, 2025 WL 3009507, at *16 ("French . . . courts have been found receptive to evidence procured through Section 1782.").

**2. Ongoing Arbitrations Between the Parties Do Not Establish Bad Faith**

Tessier says (Mot. 12, 16) that Koum's application is a "bad faith" attempt to "end run" around the Supreme Court's recent decision in *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S.

619 (2022). In that case, the Supreme Court held that Section 1782 may not be used to seek discovery for the purpose of using it in an international arbitration, which does not qualify as a foreign judicial proceeding under the statute. *Id.* at 623. The undisputed record here establishes that Koum brought this petition in utmost good faith to seek discovery for use not in arbitration but rather in criminal proceedings in France—a discovery process that has already led to smoking-gun evidence of Tessier's crimes. *See supra* 2-3. The existence of an arbitration does not preclude discovery under Section 1782 for other pending or contemplated judicial proceedings. *See ZF Automotive*, 596 U.S. at 633 (holding only that Section 1782 may not be used for the purpose of seeking discovery for arbitration).[10] This Court recognized that point in an analogous context. In *In re Bourlakova*, 2024 WL 4839047, at *4 (S.D.N.Y. Nov. 20, 2024) (Oetken, J.), *aff'd*, 2025 WL 1733495 (2d Cir. June 23, 2025), a party opposing discovery under Section 1782 argued the discovery application was an improper effort to seek discovery for ongoing *U.S.* litigation—litigation for which Section 1782 does not apply. This Court rejected that argument, concluding that the existence of pending proceedings that do *not* qualify for Section 1782 relief (like U.S. litigation) does not undermine a Section 1782 application seeking discovery for use in foreign proceedings that *do* qualify. That reasoning applies here.

Koum has been fully transparent with the Court on the full scope of the parties' disputes. Koum highlighted the arbitrations in his Application and disclaimed any intention to seek discovery for those proceedings. Br. 21, n.22. That is entirely unlike situations in which courts

---

10 The arbitrational rules do not restrict lawful disclosure or filings in other proceedings, including those seeking evidence for use in foreign criminal investigations. The arbitrations are not exclusive and do not preclude or restrict any party from pursuing related or ancillary criminal proceedings or discovery applications in other jurisdictions. Madden Decl. ¶¶ 25–29. And although the arbitrations are confidential, that confidentiality is limited to the substance of the proceedings—pleadings, witness statements, and evidence obtained and used in those proceedings—and does not extend to the underlying facts. *Id.* ¶¶ 37–42. English courts also consistently hold that confidentiality must yield where disclosure is justified by the public interest, including to expose wrongdoing, protect a party's legitimate interests, or ensure the proper administration of justice. *Id.* ¶ 39.

have found bad faith based on an applicant's "misrepresent[ation] or omi[ssion of] pertinent adverse rulings in the underlying litigation" to mislead the court. *See id.* (finding no bad faith even where applicant—*unlike* Koum—failed to notify the court of the other proceedings). The French Criminal Proceeding is a paradigmatic adjudicative proceeding that Section 1782 contemplates; Tessier's arbitrations do not change that fact. *See* Br. at 26; *supra* 14.[11]

**3. The Discovery Would Not Circumvent any Evidence-Gathering Rule**

Nothing in Tessier's submissions supports his accusation that "Koum's request for discovery would likely circumvent French law restrictions on obtaining evidence relevant to this matter." Mot. 16. Koum cites no authority that would forbid or even discourage collection of evidence through a 1782 Application for use in the French Criminal Proceeding. He instead suggests that a Paris Commercial Court's procedural ruling in Koum's separate Article 145 proceeding somehow meant to foreclose Koum from obtaining access to records regarding Tessier anywhere in the world. *Id.* The Paris court's order did no such thing.

As Koum disclosed in his initial Application, on September 15, 2025, French authorities executed a search of Tessier's office in Paris. They did so pursuant to a Paris Commercial Court order obtained by Koum under a pre-discovery procedure authorized in Article 145 of the French Code of Civil Procedure. Tessier correctly states that the French court provisionally sequestered the materials the authorities recovered to allow for *in camera* review before Koum gains access. Mot. 16; Fender Suppl. Decl. ¶ 9. But that routine protective measure is limited to the specific evidence seized in Paris. Fender Suppl. Decl. ¶ 9. Nothing in the Court's order—or the governing French procedure—suggests that the ordinary-course sequestering applies more broadly than the

---

11 Tessier's allegations of bad faith are particularly galling given his brief's apparent instruction that his English attorneys should "embellish" the facts to support his motion. Mot. 8 ("Given that discovery is underway ***[or just starting – Hassan to embellish here]*** in three foreign arbitrations . . . ") (emphasis added).

records that remain in the Court's custody and control. *Id.*

Tessier's reference (Mot. 17) to his filing in France seeking to bar Koum from seeking voluntary production from suppliers is equally inapposite. There is no credible basis to conclude that suit would bar Koum's seeking compulsory production of supplier records. Fender Suppl Decl. ¶ 5.

**4. Media Coverage of Tessier's Fraud Does Not Establish Bad Faith**

Tessier suggests that the media coverage of his fraud shows Koum's bad faith. Mot. 13. Tessier is a high-profile individual who has engaged in a deplorable course of fraud against Koum, a well-known individual. It is hardly surprising that the media reported on that story. It is also irrelevant. Section 1782 filings—like other public filings in federal court—often garner media attention.[12] Media coverage of a high-profile crime does not undermine the obvious relevance of the discovery sought to prosecute that crime, nor does it constitute harassment. It is instead an expected and constitutionally protected part of the American legal system, which treats court proceedings as public except in rare circumstances. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("The public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'"); *infra* 26-27.

**5. Koum's Subpoenas Are Narrowly Tailored.**

Tessier finally argues the subpoenas Koum issued to the Merchants are overbroad and unduly burdensome, characterizing them without explanation as "sweeping in time, subject matter, and custodial reach." Mot. 17. He argues this weighs against authorizing discovery or,

---

[12] *See, e.g.*, Danica Coto, *US federal judge allows attorneys to subpoena financial records in Antigua yacht case*, APNEWS.COM (Mar. 17, 2025), https://apnews.com/article/antigua-us-judge-yacht-russia-ceb7158e2d8b28111519c9dbfd56ccb7; Poppy McPherson, *U.S. court orders Facebook to release records of anti-Rohingya content for genocide case*, REUTERS.COM (Sept. 23, 2021), https://www.reuters.com/business/media-telecom/us-court-compels-facebook-release-records-anti-rohingya-content-report-2021-09-23/.

alternatively, justifies "significantly narrow[ing]" the subpoenas' scope. *Id*.

Tessier has no standing to litigate on behalf of the Merchants. "Intervenors cannot be heard to complain that the subpoenas are burdensome because they are not burdensome *to Intervenors*." *In re Navios S. Am. Logistics Inc*., 2025 WL 369717, at *9 (S.D.N.Y. Feb. 3, 2025) (emphasis added); *infra* 26. Tessier may object to discovery requests only "where the requests call for information that goes *far beyond* anything that would be relevant to the foreign proceeding." *Id.* (emphasis added). Tessier's "conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive" does not suffice. *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014). The subpoenas issued pursuant to the Order are narrowly tailored to obtain evidence that will directly support the specific theories Koum intends to raise in the French Criminal Proceeding. *Supra* 7-8. And Koum has engaged in good faith meet-and-confers with the Merchants who have been served, including to address any concerns around confidentiality—rendering Tessier's purported burden and overbreadth concerns entirely unfounded. Snyder Suppl. Decl. ¶ 3.

The subpoenas comfortably fit within "the familiar standards of Rule 26," *Mees*, 793 F.3d at 302, "assessed with regard to the foreign proceeding," *In re CI Invs. Inc*., 2023 WL 8643965, at *6 (S.D.N.Y. Dec. 14, 2024). Specifically, the subpoenas are tailored to entities, records, and a time period highly likely to yield relevant evidence. *See supra* 7-8. They target six specific merchants Koum knows Tessier used to source furniture, fixtures, and other design elements for his specific projects. They seek only records involving Tessier. The covered period reasonably encompasses the length of Tessier's engagement with Koum, as the precise start of Tessier's fraud is unknown. And the Merchants need produce only documents that are currently in their "actual or constructive possession, custody, or control." *See* Snyder Original Decl., Exs. 1-6. These run-

of-the-mill, appropriately tailored requests are nothing like the "sweeping . . . untethered . . . dragnet" Tessier describes. Mot. 15.[13]

Tessier's purported requirement that Koum seek only discovery as to the specific "transactions" Koum identifies in his Application has no support in the law or the facts of this case. Mot. 18. Koum has been unable to identify the full universe of Tessier's fraud due to Tessier's obstruction and obfuscation. *See supra* 4-6. And given Tessier's forgery and doctoring of the few records he did provide Koum—which Tessier does not deny—it is entirely reasonable to conclude the known transactions are just the tip of the iceberg. Koum cannot ascertain, much less establish, the full scope of Tessier's misrepresentations and fraudulent activity if he is limited to investigating the handful of transactions he has been able to piece together himself. *See, e.g.*, *Navios*, 2025 WL 369717, at *10 ("Where, for example, the financial documents are sought to show a party's liability (including by establishing specific fraudulent transactions or the sources and amounts of profit derived from misconduct), such documents are discoverable."); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 263 (2d Cir. 1993) ("[V]ictims of fraud often are unable to detail their allegations until they have had some opportunity to conduct discovery of those reasonably suspected of having perpetrated a fraud.").

## III. No Protective Order or Restriction on Disclosure is Warranted

As a final effort to shield the full extent of his deception from public view, Tessier requests a protective order mandating that the materials produced be for "attorneys' eyes only," and be "limited exclusively to the contemplated criminal proceedings." Mot. 18. He further seeks a "categorical prohibition on dissemination to the press or non-parties" and requests that "any further

---

13 Because the Court-authorized subpoenas are narrowly tailored and directed to merchants who indisputably had relevant dealings with Tessier, the cases Tessier cites (Mot. 15-16)—involving "extensive" requests to parties whose relevance was merely "tangential"—are entirely inapt.

proceedings … be filed under seal." *Id.* Tessier provides no authority supporting these types of extraordinary secrecy for evidence of commercial fraud and they are not justified.

To start, Tessier lacks standing to seek a protective order over the third-party subpoenas because he has not established he "is seeking to protect a personal privilege or other specific right." *In re Hellard*, 2022 WL 2819408, at *4 (S.D.N.Y. July 19, 2022). He invokes *the Merchants'* trade secrets and sensitive confidential information but never explains how either is implicated by generic records regarding the prices he paid or the goods he purchased using Koum's money. Tessier's "general desire to thwart disclosure of information by a non-party is simply not an interest sufficient to create standing." *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012).

In any event, no protective order is warranted. Tessier cannot meet his burden of establishing through a "particular and specific demonstration of fact," *Kelly*, 2018 WL 8221524, at *2, "that disclosure will result in a clearly defined, specific and serious injury," *In re Sept. 11 Litig.*, 262 F.R.D. at 277, nor that such injury outweighs Koum's "countervailing interests" in discerning the truth, *Kelly*, 2018 WL 8221524, at *2. Again, Tessier's hand-waving at confidential commercial pricing or sales information does not satisfy this standard.[14]

The same is true of Tessier's request to seal. Courts routinely deny motions to withhold information from public view where requesting parties fail to make a "sufficiently extraordinary" showing of need "outweighing the strong presumption in favor of public access," given the

[14] Tessier's fleeting suggestion that the European Union's General Data Protection Regulation ("GDPR") is implicated by the Court-authorized subpoenas is misplaced. *See* Mot. 18 n.3. The six merchants identified in the subpoenas are U.S.-based entities, and the discovery requests concern business records and communications maintained in the United States relating to their commercial dealings with RTD. To the extent any responsive materials incidentally include an individual's personal data, those concerns can be addressed through the ordinary procedures governing third-party discovery under Federal Rule of Civil Procedure, including meet-and-confer discussions, redactions, or a protective order. *See In re Accent Delight*, 958 F.3d at 252.

public's rights. *Flores v. Gonzalez*, 2025 WL 2613030, at *2 (S.D.N.Y. Aug. 13, 2025). Concern about "privacy" or "the potential for a negative impact on a party's future business or social status does not" suffice. *Id.*

Reputational concerns are likewise insufficient to support a gag order—"one of the most extraordinary remedies known to our jurisprudence." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1978). This type of "prior restraint on constitutionally protected expression" is rarely appropriate. *United States v. Salameh*, 992 F.2d 445, 446–47 (2d Cir. 1993). And "injury to reputation is insufficient to justify" it. *Alahverdian v. Nemelka*, 2015 WL 1276453, at *3 (S.D. Ohio Mar. 19, 2015).

## CONCLUSION

For the foregoing reasons, this Court should deny Tessier's motion.

Dated: November 12, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Orin Snyder*

Orin Snyder
Darcy C. Harris
Lee R. Crain
Samuel L. Raymond
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-5303
*Counsel for Applicant*

**WORD COUNT CERTIFICATION**

I, Orin Snyder, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 that this memorandum of law complies with the word limit set forth in this Court's Local Civil Rule 7.1 because it contains 8,703 words, excluding the parts of the motion exempted from the word limit by Local Civil Rule 7.1. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: New York, New York
November 12, 2025

*/s/ Orin Snyder*
Orin Snyder