**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re Application of JAN KOUM for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Criminal Proceeding Against Remi Tessier and Dernier Etage SARL.

Case No. 1:25-mc-00428-JPO

---

### DECLARATION OF THIERRY MAREMBERT IN SUPPORT OF JAN KOUM'S OPPOSITION TO REMI TESSIER AND DERNIER ETAGE'S MOTION

I, **Thierry Marembert**, pursuant to 28 U.S.C. § 1746, declare as follows:

### INTRODUCTION

1.     I was admitted as an *Avocat au Barreau de Paris* in France in 1994 and am the co-founder and lead partner of the law firm Kiejman & Marembert, based in Paris, France.  I specialize in criminal law, international litigation, and arbitration, with over 30 years of experience representing corporations and individuals in white-collar criminal cases, investigations, and enforcement proceedings before French courts.  Enclosed as Exhibit 1 to this Declaration is a profile of my practice from Legal500.  *See* Ex. 1.[1]  I regularly act for clients in complex, cross-border matters involving fraud, breach of trust, corruption, and other financial offenses.

2.     Before Jan Koum filed this Application for an Order Pursuant to 28 U.S.C. § 1782, he engaged me to act as counsel in connection with the preparation and filing of a criminal complaint in Paris, France (the "**French Criminal Proceeding**") concerning the fraudulent and deceptive acts of Mr. Koum's former interior designer, Rémi Tessier, and his

---

[1]  Ex. 1 (*Legal500*, Kiejman & Marembert (last accessed Nov. 12, 2025)), available at https://www.legal500.com/rankings/ranking/c-france/dispute-resolution-white-collar-crime/21754-kiejman-marembert.

company, Dernier Étage SARL (together, "**RTD**"). I am preparing a draft criminal complaint, in coordination with Gibson, Dunn & Crutcher LLP. The drafting of the French criminal complaint is now well advanced.

3.      I submit this Declaration in support of Mr. Koum's Opposition to Remi Tessier's and Dernier Etage's Motion (the "**RTD Motion**").

4.      In preparing this Declaration, I have reviewed the Declaration of Pierre-Emmanuel Fender in Support of Jan Koum's Application for an Order Pursuant to 28 U.S.C. § 1782 (the "**Fender Declaration**") and the Declaration of Leon Del Forno in support of the RTD Motion (the "**Del Forno Declaration**").

5.      Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by Mr. Koum, and my review of relevant documents. If called as a witness, I could and would testify competently regarding the information set forth herein.

## JUDICIAL PROCEEDINGS

6.      Under French law, a private litigant can initiate a criminal case before the French courts by filing a complaint, called a *plainte simple*. Article 1 of the French Code of Criminal Procedure (*Code de procédure pénale*, "**CPP**") provides that criminal proceedings may be initiated either by the local General Attorney (*Procureur de la Republique*, "***Procureur***") or by the victim of an offense—*i.e.*, a private party. Article 1 of the CPP explicitly provides: "*Cette action peut aussi être mise en mouvement par la partie lésée, dans les conditions déterminées par le présent code,*" which translates as "this [criminal] action may also be initiated by the injured party, under the conditions determined by this code." Mr. Del Forno's statement that "under French criminal procedure rules, filing a complaint by a private citizen does not amount to initiating criminal proceedings," Del Forno Declaration ¶ 5, is thus facially misleading.

2

7. Once filed, the *plainte simple* is referred to the *Procureur*. The *Procureur* may:

    a. instruct the police to open a preliminary investigation (*enquête préliminaire*) pursuant to Article 75 CPP; or

    b. request the appointment of an investigating judge (*juge d'instruction*) to open a judicial investigation (*instruction*) under Articles 80 and 81 CPP.

8. If the *Procureur* engages in an *enquête préliminaire*, the *Procureur* may:

    a. prosecute the case, either by requesting the appointment of a *juge d'instruction* or by referring the case to a court for trial;

    b. decide to engage an alternative to prosecution (*procédure alternative aux poursuites*) under Articles 41-1, 41-1-2 and 41-2 CPP;

    c. take no action (*classement sans suite*) (Article 40-1 CPP).

9. If the *Procureur* refers the case to trial after an *enquête préliminaire*, victims of crimes, like Mr. Koum, may participate in the trial. Evidence obtained by victims can be admitted at trial and considered by the criminal judge.

10. If the *Procureur* notifies the complainant that he will not refer the case to trial, or if three months have elapsed since the filing of a *plainte simple* (even if the *Procureur* has opened an investigation), the victim of a crime may file a *plainte avec constitution de partie civile* before the senior investigating judge (*doyen des juges d'instruction*), thereby automatically compelling appointment of a *juge d'instruction*. The rules governing this procedure are set forth in Articles 85 et seq. CPP.

11. Importantly, the compulsion of the appointment of the *juge d'instruction* is not discretionary: once the *plainte avec constitution de partie civile* is lodged and the required deposit (*consignation*) is paid, the *doyen des juges d'instruction* must assign the case to a judge and formally open the *instruction*. Thus, even if the *Procureur* conducts an *enquête préliminaire* and decides not to refer the matter for trial or decides not to pursue the matter, a

crime victim like Mr. Koum will then be entitled to an *instruction*, overseen by a *juge d'instruction*, as a matter of law.

12.    During the *instruction*, which is an investigation conducted under the supervision of a judge, an injured party, called a *partie civile*, is an active participant. They are entitled to provide evidence, request investigative measures, and can appeal certain rulings. Articles 80, 81 CPP. At the conclusion of the *instruction*, the *juge d'instruction* either issues an order of dismissal (*ordonnance de non-lieu*), if he considers that the evidence of a possible offense is insufficient, or refers the case to the criminal court for trial (*ordonnance de renvoi*), if he considers the evidence sufficient. If the *juge d'instruction* orders dismissal, the *partie civile* has the right to appeal. On such an appeal, the sufficiency of the evidence, including evidence provided by the *partie civile* at all stages of the investigation, is central to its outcome.

13.    Even in the rare circumstance where the *Procureur* initiates an alternative to prosecution, *procédure alternative aux poursuites*, after the *enquête préliminaire*, the case remains within the scope of judicial proceedings.

14.    Mr. Del Forno places heavy emphasis on the distinction between an *enquête préliminaire* (Article 75 CPP) and an *instruction* (Articles 80 and 81). Del Forno Declaration ¶¶ 8–11. This distinction is formally correct but legally irrelevant to the question of *when* criminal proceedings are initiated under French law. Both the *enquête préliminaire* and the *instruction* are mechanisms to determine whether a criminal charge should be brought against a target in French criminal court. The difference lies in who supervises the process: the *Procureur* in an *enquête préliminaire*, and the *juge d'instruction*, working with a *partie civile*, in an *instruction*. As Mr. Del Forno points out, the *Procureur* may even refer a matter directly to a *juge d'instruction*. Del Forno Declaration ¶ 8.

15.    I intend to file a *plainte simple* on Mr. Koum's behalf, with all available evidence to support the relevant criminal charges against Tessier and RTD. After that filing,

4

the *Procureur* may open a preliminary investigation or refer the matter to a *juge d'instruction*. If the *Procureur* takes no action or does not prosecute within three months, I intend to file on Mr. Koum's behalf a *plainte avec constitution de partie civile* before the *doyen des juges d'instruction*. Regardless of the procedure, the result is the same: a French criminal proceeding will have been commenced before a French judge.

16. Mr. Del Forno's statements that most criminal proceedings are handled by the *Procureur*, Del Forno Decl. ¶ 9, is irrelevant to Mr. Koum's rights under French law to have his case against Tessier and RTD ultimately either heard by a criminal court if the *Procureur* refers the matter for trial, or investigated by a *juge d'instruction* if the *Procureur* does not. Similarly, while Mr. Del Forno asserts that the *enquête préliminaire* could take years before Mr. Koum can file a *plainte avec constitution de partie civile*, and that during the *enquête préliminaire* Mr. Koum may not have access to the case file, Del Forno Declaration ¶¶ 10, 31, neither of those factors are relevant to Mr. Koum's rights as a matter of French law, which includes his right to have criminal charges against Tessier and RTD either heard at trial or examined/assessed by an investigating judge, no matter how long that takes or if he has access to the case file.

## FILING OF CRIMINAL COMPLAINT

17. As a matter of practice, a *plainte simple* (criminal complaint) that is not substantiated by credible evidence has a high likelihood of being disregarded by the police and the *Procureur* due to its lack of factual and legal foundation. Thus, while Mr. Del Forno is formally correct that "under French law, there is no minimal standard of proof an alleged victim needs before he may file a criminal complaint," Del Forno Declaration ¶ 18, that statement disregards best practice, which is that victims seek to obtain evidence to present the strongest and most substantiated complaint to the *Procureur*.

5

18.     A criminal complaint lacking factual and legal substance risks dismissal or inaction.  There is already significant evidence of criminal conduct by Tessier and RTD. However, in accordance with best practice, we intend to file on Mr. Koum's behalf a *plainte simple* supported by the most substantial documentary evidence possible, collected both in France and the United States.  By presenting a thoroughly substantiated complaint, we maximize the likelihood that authorities will open a genuine investigation and the matter will ultimately advance to criminal court.

## THE EVIDENCE SOUGHT IS ADMISSIBLE IN THE FRENCH CRIMINAL PROCEEDING

19.     Any and all evidence gathered brought by private complainants, including evidence obtained via the U.S. proceedings pursuant to 28 U.S.C. § 1782, is admissible at any stage of a French criminal proceeding, including in *enquêtes préliminaires* and *instructions*. Article 427, §1, CPP ("*Hors les cas où la loi en dispose autrement, les infractions peuvent être établies par tout mode de preuve et le juge décide d'après son intime conviction*," meaning "Except where the law provides otherwise, offences may be established by any means of proof and the judge decides according to his own personal conviction.").  It is for the *juge* or *Procureur de la Republique* to determine the probative weight of this evidence (and all other evidence) under the principle of free evaluation of proof (*libre appréciation des preuves*). Similarly, victims have the right to bring all evidence to support their accusations.  Even in civil litigation, where less evidence is admissible, French courts have specifically denied requests to declare evidence obtained via Section 1782 proceedings inadmissible.  *E.g. Commercial Tribunal, Nancy, 13 January 2014, no 2012011430.*

20.     In addition, in a circumstance where the matter is referred to a *juge d'instruction*, either by the *Procureur de la Republique* directly or because the private claimant has filed a *plainte avec constitution de partie civile*, private complainants who become *parties civiles* have standing to request acts of investigation including the collection of evidence that

they do not have access to themselves, through specific procedural mechanisms. Articles 81 and 82-1 CPP (permitting *partie civile* to file a *demande d'acte* asking the *juge d'instruction* to order specific acts of investigation to search and collect evidence).

21.     At a later criminal trial, *parties civiles* have the same rights as the defendant and the *Procureur de la République*, including to introduce evidence, call witnesses, and make oral and written submissions before the court. Articles 420-1, 427, 442-1, 444, 459 and 460 CPP.

22.     In short, French criminal procedure provides multiple mechanisms for a victim of a crime like Mr. Koum to introduce and rely upon foreign-obtained evidence: first, by transmitting the evidence to the *Procureur de la Republique* or police during an *enquête préliminaire*, or by transmitting the same to the investigating judge during the *instruction*; and finally, by transmitting the evidence to the trial court.

23.     The fact that the "primary fact-finding tool of French criminal investigations" is an operation by criminal authorities in no way means that Mr. Koum is not allowed to obtain, and introduce, evidence on his own. *See* Del Forno Declaration ¶ 20. Whether that evidence could be obtained through other means in France or through French legal means like a Mutual Legal Assistance Treaty is also not a relevant factor to whether the evidence is admissible. Del Forno Declaration ¶¶ 20–21. Despite Mr. Del Forno's implications, I am unaware of any doctrine under French law that would restrict the collection and subsequent admission of evidence via a foreign means, or that such collection could be considered to have "circumvented" other mechanisms of collection specifically described in the CPP. Del Forno Declaration ¶¶ 25, 32. Again, in criminal matters, French law states that all evidence brought by complainants are admissible, whatever their origin.

24.     Further, the merchants from whom Koum seeks discovery in the United States are not currently contemplated to be parties in the criminal proceedings I intend to file. As a result, obtaining discovery from these non-French parties would be time-consuming under the

7

Mutual Legal Assistance process. Regardless, obtaining information that is otherwise unavailable or difficult to obtain under French legal procedures definitionally cannot be "circumvention" of those procedures.

### APPLICABLE CRIMINAL OFFENSES UNDER FRENCH LAW

25. Mr. Del Forno asserts that the facts identified by Mr. Koum would not constitute criminal offenses under French law. Del Forno Declaration ¶¶ 12–17. He misstates French criminal law.

26. The conduct Mr. Tessier engaged in—namely the misappropriation of funds, fabrication and falsification of documents, and repeated deception in the course of a fiduciary relationship—gives rise to several well-established criminal offenses under the French Criminal Code (*Code penal*, "**CP**") and the French Consumer Code (*Code de la consummation*).

27. I believe it is for the appropriate French criminal court or investigating judge to determine whether the misconduct of Tessier and RTD in fact amounts to the alleged criminal offenses. I write here solely to correct the record. Nothing in this Declaration should be taken as conceding or waiving any position on the merits of these issues, which are expressly reserved for determination in the proper forum.

28. **Fraud (*escroquerie*).** Mr. Del Forno does not contest that Mr. Tessier "[sent] an invoice to claim payment of an amount that is not actually owed," but suggests that this act alone is insufficient to establish the offense of fraud under Article 313-1 CP. Del Forno Declaration ¶ 14. However, the case law he cites merely holds that the issuance of a false invoice, *standing alone*, is insufficient to establish the offense of *escroquerie*. French courts require additional conduct (*manœuvres frauduleuses*) such as fabricating invoices, using third-party fronts, and staging fictitious transactions to lend the false statement force and credibility. *See, e.g.*, Cass. Crim., 4 May 2006, n° 05-81.530; Cass., Crim., 2 juin 1999, n° 98-82.815).

8

Mr. Koum has already obtained information indicating precisely such additional conduct by Mr. Tessier (including invoice fabrication); and I understand Mr. Koum filed the Section 1782 application to obtain more evidence of similar conduct. Such evidence would clearly satisfy the core elements of a criminal charge of fraud under French law. Article 313-1 CP (intentional deception through fraudulent maneuvers causing another to deliver funds or property, resulting in damages).

29.    **Breach of Trust (*abus de confiance*).** Mr. Del Forno contends that the breach of trust offense is "equally inapplicable," because "[n]owhere does the Fender Declaration suggest that Koum ever entrusted any funds or property to Tessier." Del Forno Declaration ¶ 15. That is incorrect. The Fender Declaration explicitly states that "Tessier was entrusted with … procurement of furniture, fixtures, and equipment ('FF&E') worth tens of millions of Euros," and that he "controlled all aspects of the associated invoicing and payments." Fender Declaration ¶ 5. Rather than apply those funds fully and faithfully to the agreed purpose, Mr. Tessier diverted a portion for his personal benefit by inflating prices, concealing negotiated discounts, misrepresenting auction purchase prices, and substituting inferior goods while invoicing for higher-quality items. Fender Declaration ¶ 6. This misuse of entrusted funds satisfies the core elements of *abus de confiance* under Article 314-1 CP (entrustment, diversion contrary to the agreed purpose, and resulting damages).

30.    **Deception (*tromperie*):** Mr. Del Forno notes that Article L. 213-1 of the French Consumer Code cited by Mr. Fender cited in his declaration "was repealed by a later statute." Del Forno Declaration ¶ 16. He omits the effect of that reform.

31.    On March 14, 2016, *Ordonnance* n° 2016-301 restructured the Consumer Code and replaced Article L. 213-1 with a new provision—Article L. 441-1. The new article preserves the same essential prohibition against deceptive commercial practices as the former Article L. 213-1 while providing stricter penalties. Accordingly, both pre-2016 and post-2016

conduct remain actionable in the contemplated proceeding. Mr. Del Forno's claim that Mr. Koum's deception theory is "incorrectly based on a repealed legal provision" is therefore incorrect. Del Forno Declaration ¶ 16.

32.    Mr. Del Forno's more general statement, that the facts Mr. Koum has adduced "instead correspond to civil claims that should be pursued in court or arbitration," is also wrong. Del Forno Declaration ¶ 16. Acts like fraud in the scope of a contract can be a violation of the civil law, but in some circumstances also violations of criminal law.

### INVESTIGATIVE SECRECY AND CONFIDENTIALITY

33.    Mr. Del Forno suggests that obtaining evidence through Section 1782 would circumvent France's rules on investigative secrecy (*secret de l'instruction*) or compromise confidential materials. Del Forno Declaration ¶ 30. That assertion misstates the purpose and scope of *secret de l'instruction* under French law. The principle exists to protect the integrity of ongoing *judicial* proceedings, not to impose a blanket confidentiality obligation on all documents that might later be used in a criminal proceeding.

34.    The purpose of *secret de l'instruction* is therefore limited: it governs disclosure of the content of judicial investigation files by the authorities themselves, not the use of documents that a victim independently obtains and submits to the court. An invoice or email does not become confidential simply because it might later appear in a criminal case file. Obtaining such evidence through a lawful U.S. process like Section 1782 is fully consistent with French law and does not constitute a circumvention of French proof-gathering restrictions.

### CONCLUSION

35.    In sum, the preparation of Mr. Koum's criminal complaint against Mr. Tessier is well underway and its filing will constitute the initiation of criminal action in France against Mr. Tessier and RTD. The evidence sought through the Section 1782 proceeding will materially assist in substantiating those claims before the French authorities.

10

\*        \*        \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 12, 2025

Location: Paris, France

Thierry MAREMBERT

\*        \*        \*

11