UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of JAN KOUM, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Criminal Proceeding Against Remi Tessier and Dernier Etage SARL. | No.: 1:25-mc-00428-JPO |

**SUPPLEMENTAL DECLARATION OF LEON DEL FORNO IN SUPPORT OF REMI TESSIER AND DERNIER ETAGE SARL'S MOTION TO INTERVENE, VACATE THE ORDER ISSUED BY THIS COURT AUTHORIZING DISCOVERY IN AID OF A FOREIGN PROCEEDING UNDER 28 U.S.C. § 1782 AND DISMISS THE PETITION**

I, LEON DEL FORNO, declare pursuant to 28 U.S.C. § 1746:

1. I was admitted as an Avocat au Barreau de Paris in France in 2013 and am a Partner at the law firm Temime, in Paris, France. I practice and specialize in white-collar crime and commercial litigation.

2. I submit this supplemental Declaration in support of the motion of Remi Tessier and Dernier Etage SARL to intervene, vacate the order issued by this court authorizing discovery in aid of a foreign proceeding under 28 U.S.C. § 1782 and dismiss the petition.

3. In preparing this Declaration, I reviewed a copy of the Declaration of Thierry Marembert in support of Jan Koum's application for an order pursuant to 28 U.S.C. §1782 (the "Marembert Declaration"). The purpose of this supplemental Declaration is to correct certain inaccuracies of the Marembert Declaration and to clarify my initial Declaration where necessary.

4. The Marembert Declaration alleges that filing a criminal complaint "will constitute the initiation of criminal action in France against Mr. Tessier and RTD" (Marembert Decl., §35; see also §6). This is wrong.

1

5. Under French criminal procedure rules, the initiation of criminal proceedings is known as *mise en mouvement de l'action publique* (setting the public action in motion). According to Article 1 of the French code of criminal procedure ("FCCP"), magistrates and other public officials have a broad power to set this action in motion; by contrast, a victim is only allowed to do so "under the conditions set forth in this code". In fact, there are only two procedural avenues for a victim to set the public action in motion, i.e. to initiate criminal proceedings, of its own accord: delivering a summons to appear before the criminal court (an act known as *citation directe* and governed by Articles 392 and 392-1 of the FCCP) and filing a complaint with an investigating judge (an act known as *plainte avec constitution de partie civile* and governed by Article 86 ff. of the FCCP). Filing a complaint with the prosecutor (*plainte simple*) is not one of those avenues.

6. This is further confirmed by the statute of limitations rules. Article 9-2 of the FCCP provides that the statute of limitations may be tolled by a number of actions. The first category of such actions are acts "which aim at setting the public action in motion", which are exhaustively listed in this article. Crucially, this list does not include the filing of a *plainte simple*, which means that it does not amount to a *mise en mouvement de l'action publique*, i.e. to the initiation of criminal proceedings.

7. This is also the long-held view of French courts. The French Supreme Court has ruled on multiple occasions that "a complaint filed with the prosecutor is not an act of prosecution or investigation and does not have a tolling effect on the statute of limitations of the public action" (French Supreme Court, 11 July 2012, case No. 11-87.583; 8 January 2019, case No. 18-82.235).

8. In summary, under French law, the filing of a *plainte simple* does not initiate any criminal proceedings: it is simply a tool to bring specific conduct to the attention of the

prosecutor. Consequently, the process which Koum is currently preparing, and for which he alleges that he needs discovery in the US, is not adjudicative in nature.

9. For the same reason, the Marembert Declaration is wrong when it alleges that the distinction between *enquête préliminaire* and *instruction* is "legally irrelevant to the question of when criminal proceedings are initiated under French law" (§14). Before an *investigating judge* is appointed or before the case is referred to a criminal court, there is no *mise en mouvement de l'action publique*, and therefore no proceedings. This is exemplified, among other provisions, by Article 41-4 of the FCCP, which states that the prosecutor can rule on the restitution of property seized by criminal authorities "during the investigation". By contrast, when a judge has been appointed, he or she has sole jurisdiction to rule on restitutions (Article 99 of the FCCP for the investigating judge, Article 478 of the same code for the criminal court). This further confirms that as long as an *enquête préliminaire* is ongoing, legally there are no criminal proceedings.

10. The Marembert Declaration alleges that, if the *enquête préliminaire* does not lead to the initiation of criminal proceedings, "a crime victim like Mr. Koum will then be entitled to an *instruction*, overseen by a *juge d'instruction*, as a matter of law" (§11). This is inaccurate.

11. Indeed, once an investigating judge has received the complaint, he has the option of refusing to open an investigation if he considers that the facts cannot legally be prosecuted (e.g. because of statute of limitations or res judicata), or that they cannot be classified as criminal offenses, or where it is clear that the facts put forward by the victim have not been committed (Article 86 of the FCCP). The prosecutor may also request the investigating judge to rule that victim's complaint is inadmissible because it does not have standing to bring claims as part of criminal proceedings (Article 87 of the FCCP). In such a case, if the prosecutor had previously declined to request the opening of an investigation, a finding that the victim's complaint is

inadmissible entails that the public action has not been set in motion, i.e. that no criminal proceedings have been initiated (French Supreme Court, 29 March 1995, case No. 94-85.464).

12. For these reasons, it is inaccurate to state the filing of a *plainte avec constitution de partie civile* will automatically lead to the initiation of criminal proceedings.

13. I agree with Mr. Marembert's statement that in practice, in France, "victims seek to obtain evidence to present the strongest and most substantiated complaint to the Prosecutor" (Marembert Decl., §17). However, Mr. Marembert himself alleges that "there is already significant evidence of criminal conduct by Tessier and RTD" (Marembert Decl., §18). This further confirms the position I set out in my initial Declaration, which is that the discovery which Koum seeks in the US is not necessary for him to prepare and file his complaint (Del Forno Decl., §18). It is therefore difficult for me to understand why he would seek the support of US courts in this respect.

15. The Marembert Declaration contains a number of misleading statements regarding the substance of Koum's criminal law allegations, which need correcting.

16. On the issue of fraud, I note that Mr. Marembert agrees with me that "the issuance of a false invoice, standing alone, is insufficient to establish the offence of *escroquerie*", and acknowledges that it requires the suspect to have engaged in *manoeuvres frauduleuses* (deceitful schemes) (Marembert Decl., §28). It is not clear to me which, if any, of the conduct which Tessier has allegedly engaged in would amount to a deceitful scheme under French law.

18. On the issue of breach of trust, as I mentioned in my previous Declaration, one of the constituent elements of the offence is that the allegedly misappropriated property must have been handed over temporarily and for a specific purpose (Del Forno Decl., §15). On the contrary, when the property is definitively conveyed to the alleged offender, such that he becomes the owner of it, there can be no breach of trust (See French Supreme Court, 5 April

4

2018, case No. 17-81.085, regarding funds conveyed to a service provider in payment for his services. See also French Supreme Court, 13 June 2018, case No. 17-82.986; 5 September 2007, case No. 07-80.529; 9 March 2011, case No. 10-81.375).

19. Mr. Marembert tries to obfuscate this issue by arguing that "Tessier was entrusted with procurement of furniture" (Marembert Decl., §29). However, this characterizes only the existence of a commercial relationship, whereby Tessier provided design and procurement services to Koum in exchange for compensation. At no point did Tessier act as an agent for Koum, nor did he hold any funds on his behalf: he simply received payment from Koum for the services that he provided. As a result, contrary to what the Marembert Declaration alleges, there was no "misuse of entrusted funds" (Marembert Decl., §29), and therefore there can be no breach of trust.

20. Finally, Mr. Marembert misrepresents my position on the confidentiality of the investigation. I never suggested that investigative secrecy attaches to "documents that a victim independently obtains and submits to the court" (Marembert Decl., §34). However, if a victim obtains documents through an *instruction*, then it is prohibited from using them for any purpose other than the investigation, as long as the *instruction* is ongoing. Parties or their counsel who infringe this prohibition are liable to prosecution (See e.g. French Supreme Court, 18 March 2015, case No. 14.86.680, confirming the prosecution of a lawyer who communicated documents obtained from the criminal case file in parallel civil proceedings).

21. As noted previously, in France, the normal course of action is for the criminal authorities to gather evidence, including the evidence which Koum is seeking in the U.S. Accordingly, if Koum were to gain access to this evidence through the French investigation process, he would be restricted from using it during the investigation.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: Paris, France

November 21, 2025

_____
Leon Del Forno